## Charles B. Hulse, Appellee, v. Oscar M. Hulse, Appellant.

1. STATUTE OF FRAUDS—*when no defense.* If a contract may by any contingency be performed within one year, it is not within the Statute of Frauds.

2. STATUTE OF FRAUDS—*when no defense.* A contract entirely executed on one side and nothing remaining to be done under it except payment by the other party, is not within the Statute of Frauds.

3. STATUTE OF LIMITATIONS—*when begins to run.* The Statute of Limitations does not commence to run against an obligation to pay money until the maturity of such obligation has arrived.

4. CONTRACTS—*what sufficient consideration.* A compromise of a doubtful claim fairly obtained is a sufficient consideration on which

to found a contract no matter what the ultimate result of a contest might have been.

5. CONTRACTS—*what sufficient consideration.* A debt barred by the Statute of Limitations or any moral obligation which was once a legal one is a sufficient consideration to support a contract.

6. REAL PROPERTY—*status of oil.* Oil in place in the earth is realty but "oil in place" is not contemplated by the term royalty. It can, however, make no difference whether royalty reserved be oil or money as royalty when collected must necessarily be personal property.

Assumpsit. Appeal from the Circuit Court of Crawford county; the Hon. E. E. NEWLIN, Judge, presiding. Heard in this court at the October term, 1909. Affirmed. Opinion filed April 9, 1910.

**Statement by the Court.** The appellee is a half brother of the appellant; and he bases his right of action in the lower court upon the following, which he insists are true facts, to-wit: December 22, 1894, he made a warranty deed to Myron N. Hulse, another half brother of his and a full brother of appellant, to ninety-six acres of land, to-wit, north half of northwest quarter of section 19, and that part of the south twenty rods of the south half of southwest quarter, section 18, that lies west of the center line of Dogwood Creek, being about 155 rods long,—all in township 7, north range, 13 west, in Crawford county, Illinois. In this deed, by fault of the scrivener, there was an error in the description of the land, the grantor only intending to convey about thirty acres of this tract, and did not intend to convey any part thereof known as the homestead or dower of Nancy Hulse, widow, mother of appellee and step-mother of the appellant. This homestead tract consists of the above named tract in said section 18, and the north twelve and one-half rods off the north side of said tract in said section 19, and contains about thirty-two acres. Myron N. Hulse lived with appellant for many years before he died, and attempted to will to appellant all his said lands. It is said by appellee that this will was never probated, and that there was some question as to his sanity when

he made the will.  Appellant, after the death of Myron
N. Hulse, asked appellee and all the other heirs of his
brother, Myron, namely, David Hulse, Joseph Hulse,
Jasper N. Hulse and Alice Scott, to join in a deed to
him to his deceased brother's land claimed by him by
will, presumably to settle all questions of title thereto.
Appellee refused to sign this deed unless appellant
would correct the error in said deed to Myron N. Hulse.
All the other heirs executed such a deed August 24,
1897.  Finally, on March 10, 1898, appellee executed
the deed to appellant in consideration of an agreement
by appellant to him that he, appellant, would make
right or correct the error in the deed to Myron N.
Hulse, and make right the wrong occasioned thereby.
The matter of correcting said error is not heard of
much after the making of this deed until the year 1907,
the widow still occupying the homestead.  The land
becoming valuable for oil, on a renewal of this contro-
versy, appellee and appellant finally entered into an-
other agreement by which the land known as the home-
stead tract was to be leased for oil for the best royalty
obtainable by appellant and the widow and the other
heirs; and appellee was to be paid for this tract by ap-
pellant all that could be realized out of the royalty for
oil on the share claimed by appellee, the "top" thereof,
as they expressed it, to be owned by appellant, and the
land to be entirely appellant's when the oil should all
be taken therefrom.  The land was then leased under
this agreement by the widow, the appellant and the
other heirs to R. T. Cisler and W. A. Campbell for oil;
and one David W. Odell was by contract made trustee
for them to dispose of the rental oil and divide the
proceeds thereof among the parties to whom it should
be paid.  Under this agreement Odell collected money
for rental oil on this share held by appellant under his
agreement with appellee the sum of $1,749.08.  Of this
sum collected appellant paid appellee in 1907 and 1908
the sum of $836.25.  Appellant then refusing to pay
any further payments under said agreement, appellee

began this suit in assumpsit in the lower court to re-
cover against appellant the remaining sum of $912 col-
lected as royalty.   Appellant pleaded the general issue,
special plea of the five years' Statute of Limitations
and two pleas of Statute of Frauds, that the supposed
promise was an agreement for sale of land, etc., and
was not to be performed in one year, etc., and that they
were not in writing, etc.   Issues were formed, and on
a trial appellee obtained a verdict and judgment
against appellant for $700, after appellant's motion for
new trial was overruled.   Appellant appeals to this
court assigning numerous errors of the lower court.

P. G. BRADBURY and JONES & BELL, for appellant.

SHAMHART & ISLEY, for appellee.

MR. JUSTICE DUNCAN delivered the opinion of the
court.

The appellant's counsel in their argument rely on
three grounds for a reversal of the judgment of the
lower court: (1) That the appellee did not prove the
alleged contract by the preponderance of the evidence;
(2) that said contract was not in writing and void un-
der the Statute of Frauds; (3) said contract was void
for want of a sufficient consideration.

First.   The alleged contract between the appellee
and the appellant was abundantly proved by the appel-
lee's evidence.   It is admitted by the appellant in his
evidence that there was a mistake in the deed of ap-
pellee to Myron N. Hulse; and that he asked the
appellee and the other heirs of Myron N. Hulse to
make him another deed to the land properly describing
it; and that appellee at first refused to do so, insisting
that there was a mistake against appellee in the orig-
inal deed.   He also admits that he paid to appellee
$662.60 in three different payments, and that they were
made at about the same time and at the same places as
appellee stated they were made.   His explanation,

however, is that his brother was poor and needy, and that all of said payments were gifts, pure and simple, and not payments in pursuance of any such contract as appellee claimed. He denies positively that he either made any such agreement with appellee, or that he promised his step-mother that he would pay appellee the royalty realized on this disputed share of land, if she would join in a lease of the homestead tract for oil. These contracts, however, are positively testified to by appellee and his mother, and they are strongly corroborated by David Hulse, Jackson Scott and Rolla Hall. David Hulse testified that appellant said when the lease for oil was made, that there was a mistake in the deed to Myron, and that he intended to turn the royalty over to Charley; but that he, appellant, wanted the "top of the ground." Nancy Hulse, the widow, testified that he said to her that if she would sign the lease for oil, he would give Charley the "royalty and bonus," and that she consented and signed the lease. Rolla Hall testified that appellant told him about July 6, 1908, that Charley was drawing the royalty and that he, appellant, was to get the land; and, that while he didn't believe in "going back" on what he agreed to do, he thought he would take out Charley's royalty and give it to Joe (another brother). A great deal of the evidence of the appellant and his witnesses, in a measure, corroborated the appellee and his witnesses; and the court and jury were thoroughly warranted in finding for the appellee on this question. The fact that appellee was mistaken as to where, and before whom, he signed the deed has little significance, as well as his statement that he did not acknowledge the deed to appellant before any one. No intention of the witness to deny this deed, or to testify falsely, is shown by these statements, as it was at all times his claim that he signed this deed. These statements simply indicate a probable fault in memory, and a lack of knowledge as to what constituted an acknowledgment of the deed.

Second. The Statute of Frauds has no application

to this case, and the debt was in no sense barred by the Statute of Limitations. The contract of appellant was that he would pay appellee the royalty realized for that share of the land, that is, the rent or profits of the lease, if appellee would let the remainder of the land, after the oil was taken, remain in appellant's name. Oil in place in the earth is realty, to be sure; but "oil in place" is not contemplated by the term royalty. Royalty, even if paid in oil, is personal property, and the proceeds thereof would be money. It is not always the case that in leases for oils or minerals that royalty is payable in certain portions of the oils or minerals to be taken, as it happens to be in this case; and at the making of this contract sued on, it was not known what would be the amount or character of the royalty paid, or whether there would in fact be anything in the way of royalty realized. But it can make no sort of difference whether the royalty reserved be oil or money, as royalty, when collected, must necessarily be personal property in any case. The Statute of Limitations could have no bearing in the case, because the payments for this land were not due until the royalty was collected, and the first royalty was collected in November, 1907. It is also true that if the contract might, by any contingency, have been performed within one year, it is not within the Statute of Frauds. So a contract entirely executed on one side, as this one was, and nothing remains to be done except payment by the other part, it is not within such statute. McPherson v. Cox, 96 U. S. 404, 24 L. Ed. 746; Osgood v. Skinner, 111 Ill. App. 606; White v. Murtland, 71 Ill. 250; Fraser v. Gates, 118 Ill. 112; Curtis v. Sage, 35 Ill. 22.

Third. The consideration was ample to support the contract. The compromise of a doubtful claim, fairly obtained, is a sufficient consideration on which to found a contract, no matter what the ultimate result of a contest might have been. So is a debt barred by the Statute of Limitations, or any moral obligation which was once a legal one. Lawrence v. Coddington, 52 Ill. App.

133; Honeyman v. Jarvis, 79 Ill. 322; Keener v. Crull,. 19 Ill. 189; Morse v. Crate, 43 Ill. App. 513; Hobbs v. Greifenhagen, 91 Ill. App. 400. These authorities proceed upon the principle that the law permits a man to pay an honest debt no matter how barred, or to right any wrong or grievance that another may have suffered by his conduct, without litigation; and that "when he constitutes himself a judge in his own cause and decides against himself," by making a new contract, "he cannot be heard to reverse his own judgment."

There is one question in this record not made clear, and that is whether or not the total amount of $1,949.08 realized by appellant for royalty, all came by reason of the share of land in question. We could not hold, under the evidence of this record, that appellee is entitled to the royalty of any other part of the homestead tract held by appellant by other title than that that came to him by reason of the error in appellee's deed to his brother, Myron. The agreement did not cover the tract or share conveyed by Jasper Hulse to appellant, or any other share held by him except appellee's original share deeded by him by mistake. However, there is no complaint here, and there was none in the court below, that the verdict is excessive. Hence it must be presumed that this royalty all came to appellant by reason of the tract in question.

Perceiving no reason why the judgment below should be reversed, it is therefore affirmed.

*Affirmed.*