PALMER *et al. v.* CREWS.

(In Banc. May 10, 1948.)

[35 So. (2d) 430. No. 36736.]

Roach & Jones, of McComb, for appellants, James P. Palmer et al.

**N. W. Overstreet, Jr.,** of Jackson, for appellants, Carroll K. Crews et al.

810

Weeks, Hankerson & Surles, of Tyler, Texas for appellant, Lena Alma Koller Crews.

Satterfield, Ewing & Hedgepeth, of Jackson, for appellee.

**McGehee, J.**, delivered the opinion of the court.

This suit is brought by the appellee, R. N. Crews of Fulton, Missouri, who is a brother of C. C. Crews of near Tyler, Texas, deceased, and who is also one of the devisees under the last will and testament of the said C. C. Crews, seeking to have himself declared to be the owner in fee simple of an undivided one-half interest in a number of leases of oil, gas, and other minerals, and in certain minerals in place acquired by deed underlying certain described lands in Mississippi located in Pike County and several other counties therein, and to have the claim of the appellant, Lena Alma Koller Crews, widow and sole

heir-at-law of the testator, as well as claims of the appellants, Martha, Mary (now Mrs. Mary Crews Palmer), Carroll, and Sara Crews, all adult children of the appellee, R. N. Crews, and the claims of James P., Robert N., and Sydney W. Palmer, minor children of the said Mrs. Mary Crews Palmer, cancelled as clouds upon the alleged fee simple title asserted by the appellee to the said undivided one-half interest in said properties.

The trial court granted the relief thus prayed for, and also held that the appellant, Lena Alma Koller Crews, as widow and sole heir-at-law of the testator, is the owner in fee simple of the remaining undivided one-half interest, by reason of the renunciation by her of the will of her husband, C. C. Crews, which was filed in the Chancery Court of Pike County, Mississippi, where the will was probated, after the same had been first probated in the State of Texas, where the estate in that state has been fully administered.

The widow's right to at least an undivided one-half interest in these Mississippi properties is not contested, she having no separate estate here, and an estate of but little value elsewhere at the time of the death of her said husband.

The controversy here is (1) whether or not the testator died intestate as to these Mississippi properties, and in which event the widow would inherit the same as an entirety in fee simple, and (2) whether or not if the same were disposed of by the will the renunciation by the widow of the life estate allegedly sought to be devised to her under the will would cause the remainder to become thereupon accelerated so as to ripen immediately into a fee simple estate in the appellee, R. N. Crews, insofar as the undivided one-half interest not taken by her as sole heir-at-law upon such renunciation is concerned.

The testator, at the time of the execution of his will on June 4, 1943, which was wholly written in his own language and handwriting, owned considerable property both real and personal consisting of stock in a bank or

banks and wholesale grocery companies, some bonds and producing oil properties, a farm where he resided, between Kilgore and Gladewater, and a house and lot at Tyler, all in the State of Texas; also producing "oil interests" in Caddo Parish and elsewhere in the State of Louisiana, as well as farms in Pointe Coupee and St. Landry Parishes in said state; and the oil and gas leases, together with the minerals in place acquired by deed, as hereinbefore mentioned in the State of Mississippi. But at the time of the death of the testator on March 1, 1945, it does not appear whether he had disposed of any of his property in Texas or not, but his entire estate at his death was estimated to be worth at least $380,000, including the property in Mississippi which was estimated to be then worth slightly less than $15,000.

In the introductory part of his will, the testator first states that: "I give all my estate real and personal" after all debts are first paid. In this sentence, no beneficiary or beneficiaries are named. Then the testator writes "(2) second I give and bequath to my beloved wife Lena Alma Koller Crews my home and plantation on Kilgore and Gladewater Road Gregg Co. Texas . . . and everything that is on the plantation . . ." Also "all of my bonds and stock, house in Tyler or elsewhere . . . and lots."

He then provides in the next paragraph that if there be any "heirs" the above-mentioned property (in the state of Texas) is to be divided equally among them and his said wife; otherwise, that she is to have full possession with the right to sell or otherwise dispose of the stocks, bonds, and other chattels or anything in her possession, but the plantation at her death "I bequeath to the Baptist Foundation of Texas" to be divided equally between Bailey University and some other named educational and charitable institutions.

Then follows as a part of the same paragraph in the will the following: "In addition to the above I bequath to my wife Lena Alma Koller Crews all my royalties dur-

ing her lifetime and thereafter to go to my brother, R. N. Crews, Fulton, Mo. if living and if not to his children, Martha, Mary, Carroll and Sara Crews if living and if not to their descendants. I also will and bequath my interest with J. L. Booty (Crews & Booty) consisting of a farm near Garden Valley, Texas to my brother Robert (R. N. Crews) Fulton, Mo. if living if not to his children Martha, Mary, Carroll and Sara. I also bequeath all my oil interests in Caddo Parish, Trees City & elsewhere if any to my brother, Robert N. Crews, Fulton, Mo., if living and my farms in Porte Coupee Parish, Louisiana, and St. Landry Parish property in and near Melville. If he is not living I bequeath this also to his children.''

The foregoing constitutes all the words of disposition and pertinent language contained in the will which has any bearing upon the issues presented to us for decision on this appeal.

It is to be noted that the testator first devised unto his wife such land as constituted the farm where he resided in Texas, a house and lot in the City of Tyler, and other city lots owned by him in that State, but limited the devise to a life estate as to the home and plantation, thereby disposing of all of his land in Texas by the devise in her favor except the farm in Garden Valley, Texas, in which he owned an undivided interest and which he devised to his brother, R. N. Crews, of Fulton, Missouri. Also that he bequeathed to his wife all of his personal property in Texas, including his cattle, horses, and other livestock, and his stocks and bonds. That he then next wrote: ''In addition to the above I bequeath to my wife Lena Alma Koller Crews *all my royalties* during her lifetime and thereafter to go to my brother, R. N. Crews, Fulton, Missouri, if living, and if not to his children, Martha, Mary, Carroll and Sara Crews if living and if not to their descendants.'' (Italics ours.)

The record discloses that the testator then owned producing royalties in a technical sense in the State of Texas. As to whether he owned outright some producing wells

there or was only receiving the usual royalty from producing leases, the proof before us does not clearly disclose. If he was merely receiving royalties in a technical sense, that is to say as a share from production, then the italicized words in the provision last above quoted doubtless had reference only to his oil royalties in the State of Texas, since his only other "oil interests" which were in production were oil and gas leases then producing in Caddo Parish, Louisiana, at Trees City and elsewhere in said Parish, which he devised to his said brother, R. N. Crews, of Fulton, Missouri, by a devise limited to that locality, or at least to that state; and it is reasonable to assume that the testator, being an experienced and practical oil man and president of Sabine Royalty Company at Tyler, Texas, intended to use the term "all my royalties" in the devise to his wife and the term "all my oil interests" in the devise to his brother in a different sense, the one denoting royalties as such from production—such as he may have owned in Texas—and the other denoting his oil interest, consisting of producing oil and gas leases, in Caddo Parish, where he may have been receiving more than the usual royalty from production. At any rate, the evidence fails to show that he owned any royalties as such either in the States of Louisiana or Mississippi.

The first and principal question to be decided, as stated in the fourth paragraph of this opinion, is whether or not the testator disposed of the leases of oil, gas and other minerals, and the minerals in place owned by him in Mississippi by any of the terms of this will; if not, then these properties were inherited under our statutes of descent and distribution by his wife in fee simple as his sole heir at law, and in which event we do not reach a consideration of the second question as to the respective rights of the appellee, R. N. Crews, as a remainderman, and his children or their descendants, as substitutionary remaindermen, in a one-half undivided interest in these Mississippi properties.

In the outset, it is to be conceded that a royalty is an interest in real estate, entitling the royalty owner to a share in the production of oil, gas, or other minerals therefrom. But the question here is whether or not the use of the term "all my royalties" by this testator in his will would encompass the leases of oil, gas and other minerals which he owned outright, and the minerals in place which he had acquired by deed.

We shall give full recognition to the rule that a will is to be construed so as to avoid intestacy as to any of the testator's property if that can be reasonably done, considering all of the language employed in the instrument itself, and such circumstances as are shown to have confronted the testator where the same may aid in the construction thereof when the meaning of the language used is not clear. Also, the well-established rule that a will is to be construed according to the laws of the domicile of the testator as to the disposition intended of property in another state, unless it is clear from the instrument itself that he intended that the laws of the latter state should control, and which intention does not appear here. Of course, in the application of the rule last above stated, it is to be assumed that the testator knew to whom his property would descend under the laws of another state in the absence of a testamentary disposition thereof.

But where a term employed in the will has a well-defined meaning and is clearly expressed therein, the instrument must be construed as written. In ascertaining the intention of the testator, resort must be had to what he did say, when his language is clear and unmistakable, and not in what he may have intended to say. In other words, the courts are not authorized to create a provision or to legislate in the premises. Their duties are judicial. Supporting the rule in that regard, which prevails in Texas and elsewhere, are the cases from our own Court of Keely v. Adams, 149 Miss. 201, 115 So. 344; Simpson v. Watkins, 162 Miss. 242, 139 So. 400; Low v. First National Bank & Trust Company of Vicksburg, 162 Miss. 53, 138

So. 586, 80 A. L. R. 112; National Bank of Greece v. Savarika, 167 Miss. 571, 148 So. 649; and Byrd v. Wallis et al., 182 Miss. 499, 181 So. 727.

It is well-settled by numerous decisions of the Supreme Court of Texas, as is true elsewhere, that the terms "royalty," "minerals in place acquired by deed," and "leases of oil, gas, and other minerals" have a well-defined meaning as separate and distinct estates when one is compared to the other. Summers Oil and Gas, Perm. Ed., Vol. 3, page 348; Thuss, Texas Oil & Gas (2d Ed.) at p. 156; Glassmire, Oil & Gas Leases & Royalties at p. 63; Watkins v. Slaughter, 144 Tex. 179, 189 S. W. (2d) 699; La Laguna Ranch Company v. Dodge, 18 Cal. (2d) 132, 114 P. (2d) 351, 135 A. L. R. 546; Schlittler v. Smith, 128 Tex. 628, 101 S. W. (2d) 543; Richardson v. Hart, 143 Tex. 392, 185 S. W. (2d) 563; Humble Oil & Refining Company v. Harrison, Tex. Sup., 205 S. W. (2d) 355, 360; Harris v. Currie, 142 Tex. 93, 176 S. W. (2d) 302; Hulse v. Hulse, 155 Ill. App. 343; and Vandenbark v. Busiek, 7 Cir., 126 F. (2d) 893, 896. And a practical oil man of many years experience, in the oil business, serving as president of a royalty company, is presumed to know and fully understand the difference between these separate estates.

In Summers Oil and Gas, Perm. Ed., Vol. 3, page 348, supra, it is stated: "Royalties for oil are usually some share of the oil produced. The lessee may agree to deliver a share in kind, in tanks or to the credit of the lessor in a pipe line to which the wells on the lease are connected. The lessor may have the option to take delivery in kind or the value thereof. The lessee may have the option to buy the lessor's royalty oil at the prevailing market price in the field."

In Thuss, Texas Oil & Gas, (Second Edition), p. 156, supra, it is stated: "By the same operative instrument some estate or interest remains in the lessor, and his interest or estate, known as 'royalty,' is necessarily influenced by the quality and duration of lessee's estate. Lessor's retained interest or royalty estate must be distin-

guished from a grant of a mineral fee by deed where the grantee under that instrument might thereafter himself become a lessor. Lessor also has an estate known as a possibility of reverter, a legal concomitant of a determinable fee estate in lessee, and this must not be confused with royalty.''

And according to Glassmire, Oil & Gas Leases & Royalties, (Second Edition), at page 63 it is said: ''A royalty proper is defined to be: 'A share of the product or profits reserved by the owner for permitting another to use or develop his property.' From this definition, which has been accepted by the courts, it is obvious that a royalty is a share in proceeds, free and clear of all expense. Both in theory and in practice it presupposes a lease, or production under a lease, in order to obtain that profit.''

And, it is also there further stated that: ''Regarding the proper meaning of the term 'royalty,' the Supreme Court of Kansas has said: 'The ordinary and legal meaning of the word ''royalty,'' as applied to an existing oil and gas lease, is the compensation provided in the lease for the privilege of drilling and producing oil and gas, and consists of a share in the oil and gas produced. It does not include a perpetual interest in the oil and gas in the ground.' ''

And also that: ''The Supreme Court of Montana says of the word 'royalty': 'The word has a very well understood and definite meaning in mining and oil operations. As thus used, it means a share of the product or profit to the owner of the property.' Royalty proper consists of a share of the oil and gas produced, but does not include a perpetual interest therein.''

And this author further states that: ''A royalty proper is participation in the proceeds derived under the terms of the lease. A mineral deed is not a 'royalty' but is an evidence of mineral ownership, or the rights thereto, which interest may or may not produce a royalty under an existing or subsequent lease.''

In other words, the distinction is to be kept clearly in mind between the thing itself, that is to say, minerals in place, and the proceeds thereof.

As to the several leases of oil, gas, and other minerals then owned by the testator in Mississippi, and which are shown to have been executed by the landowner and wife in each instance, it would appear that the royalty, either in whole or in part, was owned at the time of the execution of the will by such landowners. And as to the one-half undivided interest, or less, then owned by the testator, in the minerals in place in this state, he would have been entitled to receive his rightful portion of the annual rentals and bonuses paid under any lease of oil, gas and other minerals and also his proportionate share of any royalty that may have been derived from any future production under an existing or future lease, of which no disposition is specifically made under the will, except to such an extent that the will may have had the effect of disposing of the portion of the royalty that may be subsequently produced from such mineral estate, there being no minerals in production in this State at the time of the execution of the will.

We are, therefore, unable to extend the scope and meaning of the term "all my royalties" to encompass the numerous leases of oil, gas, and other minerals owned outright by the testator in this State and his undivided interest in minerals in place acquired by the several deeds in various counties as referred to in the record before us. Consequently, we must hold that the same were not devised by the will of the said C. C. Crews, deceased, but that as to these properties he died intestate, and that therefore the appellant, Mrs. Lena Alma Koller Crews, as widow and sole heir at law of the testator, inherited the same in fee simple, unless they were devised to the appellee, R. N. Crews, a brother of the deceased, by the quoted provision of the will, which reads: "I also bequeath all of my oil interest in Caddo Parish, Trees City & elsewhere if any to my brother Robert N. Crews

Fulton, Mo. if living . . . If he is not living I bequeath this also to his children."

It is conceded that Trees City is located in Caddo Parish, Louisiana, and it is asserted by some of the appellants that if there had been a comma immediately following the word "elsewhere" in the provision of the will last above quoted, there would be no doubt that testator was limiting this devise in favor of his brother of his "oil interest" to that owned by him in said Parish, instead of intending that the word "elsewhere" should apply to his royalties, leases of oil and gas, and other minerals, and his minerals in place acquired by deed in all three of these states.

In the first place, he could not have intended that the word "elsewhere" should apply to his royalties everywhere, since that would defeat his general devise of all of his royalties to his wife in a preceding provision of his will, since "oil interest" may include royalties. We think that this devise in favor of his brother was intended as an exception to the general devise to his wife and was intended to be limited to the particular locality of Trees City and elsewhere in Caddo Parish, or at least to any oil interests that he may have then owned in the State of Louisiana, which Louisiana properties are not involved in this suit, and this is likewise true as to those in Texas.

Moreover, it is to be observed that throughout this last will and testament there were very few commas used by the testator; and that a comma should have been used after the word "elsewhere" and before the words "if any" regardless of what was his intention. Then, too, in the interpretation of an instrument, the courts will supply the necessary punctuation to give effect to that which is clearly intended, especially when it is clear that a punctuation should have been placed regardless of what the testator intended.

Hence, we are of the opinion that the appellee, R. N. Crews, acquired no interest under the will in any of

these Mississippi properties, either under the provision devising "all my royalties" to the wife for life, with remainder to him, etc., or under the provision devising to him the testator's "oil interest" in Caddo Parish, Trees City in that parish, and elsewhere.

It is true that in the outset of his will, the testator indicated by the term "I give all my estate real and personal," after his debts should be first paid, that he did not intend to die intestate as to any of his property, but the trouble is that when he proceeded with the writing of his will he did not dispose of all his property by any applicable provision therein contained. We are not to be impaled on this preliminary statement as if suspended in mid-air on a hook and forbidden to look down into the remainder of the writing to see whether or not he did in fact give by any devise or bequest contained therein all of his estate real and personal to any one. At any rate, we have looked and we failed to find where he disposed of the properties here in controversy.

We are, therefore, of the opinion that the decree of the trial court should be reversed and that judgment should be rendered here declaring that Mrs. Lena Alma Koller Crews, as the widow and sole heir at law of the testator, since they had no children, inherited the title to all of these Mississippi properties in fee simple, that is to say, that the testator died intestate in regard thereto. To hold otherwise would mean that the widow would receive nothing of value under the will as to these properties unless the same came into production during her lifetime, since she could not dispose of a life estate in a lease of oil, gas, and other minerals, or in any minerals in place for the reason that such an estate would likely expire before any well could be drilled to the proper depth and production had.

However, we place the decision here primarily on the ground that a devise of royalties does not embrace the separate estates created by leases of oil, gas, and other

minerals or any minerals in place acquired by deed, even though it be said that these estates embrace any royalties that may be produced from such minerals.

Reversed, and decree here for the appellant, Mrs. Lena Alma Koller Crews.