MOUNGER, et al. *v.* PITTMAN

No. 40968          January 26, 1959          108 So. 2d 565

86

*Ernest R. Duff, Roy J. Goss,* Columbia; *Breed O. Mounger,* Tylertown, for appellants.

*Joe A. Keith,* Sherman, Texas; *W. H. Watkins, Jr.,* Tylertown, for appellee.

GILLESPIE, J.

On October 31, 1937, when the subject lands were not under any oil and gas lease, appellants' predecessors in title executed to appellees' predecessor in title a deed to a parcel of land wherein the grantors made the following reservation:

"We do hereby reserve for ourselves, our heirs and assigns, one-eighth of all the oil and gas which may be produced from said lands to be delivered in tanks and pipelines in the customary manner, and this shall be a covenant running with the land and all sales and other conveyances of said lands shall be subject to this reservation and agreement."

The question is whether the reservation reserved to the grantors a non-participating royalty interest or an interest in the minerals (oil and gas) in place. The chancellor held it was a reservation of the minerals in place.

The distinguishing characteristics of a non-participating royalty interest are: (1) Such share of

production is not chargeable with any of the costs of discovery and production; (2) the owner has no right to do any act or thing to discover and produce the oil and gas; (3) the owner has no right to grant leases; and (4) the owner has no right to receive bonuses or delay rentals. ██ ██ Conversely, the distinguishing characteristics of an interest in minerals in place are: (1) Such interest is not free of costs of discovery and production; (2) the owner has the right to do any and all acts necessary to discover and produce oil and gas; (3) the owner has the right to grant leases, and (4) the owner has the right to receive bonuses and delay rentals. Westbrook v. Ball, 222 Miss. 788, 77 So. 2d 274; Palmer v. Crews, 203 Miss. 806, 35 So. 2d 430.

The reservation here involved must be analyzed with the characteristics of the two kinds of estates in mind.

It must be conceded that the reservation retained in the grantors an interest in real estate pertaining to oil and gas. It does not provide, either expressly or by implication, that grantors' share of production is to be free of cost of discovery and production, an important provision in any instrument creating a non-participating royalty interest. The deed containing the reservation did not specifically grant to the grantee any right to discover and produce the one-eighth of the oil and gas, or to grant leases, or to receive bonuses and delay rentals; therefore, all these rights were retained by the grantors. McNeese v. Renner, 197 Miss. 203, 21 So. 2d 7; Westbrook v. Ball, supra.

██ ██ The inescapable conclusion is that the interest reserved by the grantors was an estate in the oil and gas in place. The estate created by the reservation has all the characteristics of an estate in the oil and gas, or minerals, in place. It has none of the characteristics of a non-participating royalty interest.

The effect of the words, "which may be produced from said lands to be delivered in tanks and pipelines

in the customary manner," will next be considered. In McNeese v. Renner, supra, this Court held that the words "that might hereafter be discovered on the lands herein described," contained in a reservation of a mineral interest would neither add to nor detract from what the reservation would have meant had they been omitted. And in Westbrook v. Ball, supra, the reservation included the words, ". . . and as may be mined and produced from said lands, . . .", and in the same reservation this sentence appeared: "All royalties payable will go to the grantor." Notwithstanding these expressions, which were of themselves and standing alone consistent with the reservation of a non-participating royalty interest, the Court held the reservation retained an interest in the minerals in place. In Texas Gulf Producing Company v. Griffith, 218 Miss. 109, 65 So. 2d 447, the conveyance was held to create a royalty interest notwithstanding it contained the words, "in, under and upon the following described lands," and stated that it was the intention of the grantors to convey "24 mineral acres." In Ford, et al. v. Jones, et al., 226 Miss. 716, 85 So. 2d 215, the instrument was held to be a deed to minerals in place notwithstanding an intention clause which declared that it conveyed "ten (10) royalty acres under the above described lands." It will thus be observed that particular words, phrases, clauses, or sentences in a reservation or deed do not necessarily control the nature of the estate created. The instrument must be considered as a whole.

It cannot be said that the words, "which may be produced from said lands to be delivered in tanks and pipelanes in the customary manner," are sufficient in themselves to compel the inference that grantors would receive one-eighth of the oil and gas free of all costs of discovery and production. The quoted words do not express or even infer any intention on the part of the grantors to grant to the grantee all of the incidental rights or mineral ownership which characterize an estate in the minerals in place.

We hold, therefore, that the grantors reserved an undivided one-eighth interest in the oil and gas in place and the decree of the chancellor should be and is affirmed.

None of the other questions raised by appellants justify discussion.

Affirmed.

*Lee, Kyle, Holmes* and *Ethridge, JJ.*, concur. *Roberds, J., McGehee, C. J.*, and *Arrington, J.*, dissent. *Hall, J.* took no part.

ROBERDS, P. J., dissenting:

In my opinion the reservation quoted in the majority opinion created in the grantors a royalty interest and was not a conveyance of minerals in place.

Glassmire, in his work entitled Oil and Gas Leases and Royalties, Second Edition, Section 23, p. 73, says: "A mineral deed is an instrument in the form of a general warranty deed which grants or transfers the minerals in place, or the right to obtain them. It conveys the minerals themselves, which produce the royalty, subject to the lease. * * * A mineral deed is not a 'royalty' but is an evidence of mineral ownership, or the rights thereto, which interest may or may not produce a royalty under an existing or subsequent lease." The incidents of a mineral lease are the right to execute leases, the right to receive bonus money, the right to receive delay rentals, and the right to receive royalty oil, and gas, or royalty payments. In Westbrook v. Ball, 222 Miss. 788, 77 So. 2d 274, this Court said: "The owner of minerals has the right to execute oil, gas and mineral leases, selecting the lessee and fixing the terms of the lease, and to receive therefrom the bonuses, delay rentals and royalties."

The courts have well defined the nature of royalty interest. Professor Summers in his work, Summers Oil and Gas, Permanent Edition, Section 571, pp. 4, 5, has this statement: "Royalties for oil are usually some share

of the oil produced. The lessee may agree to deliver a share in kind, in tanks or to the credit of the lessor in a pipe line to which the wells on the lease are connected. The lessor may have the option to take delivery in kind or the value thereof. The lessee may have the option to buy the lessor's royalty oil at the prevailing market price in the field." He further states, as to the manner of creating the interest, Section 599, pp. 278, 279, 280, 281, of his work: "Where the instruments use the words 'oil, gas and other minerals in, or under' the land as descriptive of the interest intended to be created, the courts ordinarily hold that a mineral fee interest is created, but if other words descriptive of the oil and gas are added, such as 'produced', 'saved', 'marketed' or 'made available for market', the interest created may be held a royalty, because the fraction or percentage granted or reserved is of oil and gas after production."

In Westbrook v. Ball, supra, this Court further said: "The words 'royalty' and 'minerals' have a well defined meaning as separate and distinct estates when one is compared to the other. * * * The grantor in this deed not only retained the minerals, but retained the right to go upon, enter, to explore for, drill for, mine, store and remove all of said minerals at any and all times. All these rights are necessary to the execution of an oil, gas, and mineral lease, and where minerals are reserved these rights are necessarily implied even though not specifically reserved. * * * However, in this deed all were reserved. A royalty owner has none of these rights but only has the right to share in the minerals when produced. The owner of minerals has the right to execute oil, gas and mineral leases, selecting the lessee and fixing the terms of the lease, and to receive therefrom the bonuses, delay rentals and royalties."

Glassmire, Section 21, further says: "Mineral deeds are often erroneously called 'royalty deeds.' but that designation is a misnomer for it confuses the royalty

proper with that which produces the royalty, or rather it mistakes the proceeds of the thing for the thing itself. * * * 'Royalty' refers not to oil and gas in place, but to a share in the oil and gas produced.''

A splendid summary of the question is contained in this quotation from Palmer v. Crews, 203 Miss. 806, 35 So. 2d 430:

''In the outset, it is to be conceded that a royalty is an interest in real estate, entitling the royalty owner to a share in the production of oil, gas, or other minerals therefrom. But the question here is whether or not the use of the term 'all my royalties' by this testator in his will would encompass the leases of oil, gas and other minerals which he owned outright, and the minerals in place which he had acquired by deed.

* * *

''In Summers Oil and Gas, Perm. Ed., Vol. 3, page 348, supra, it is stated: 'Royalties for oil are usually some share of the oil produced. The lessee may agree to deliver a share in kind, in tanks or to the credit of the lessor in a pipe line to which the wells on the lease are connected. The lessor may have the option to take delivery in kind or the value thereof. The lessee may have the option to buy the lessor's royalty oil at the prevailing market price in the field.'

* * *

''And according to Glassmire, Oil and Gas Leases and Royalties, (Second Edition), at page 63 it is said: 'A royalty proper is defined to be: ''A share of the product or profits reserved by the owner for permitting another to use or develop his property.'' From this definition, which has been accepted by the courts, it is obvious that a royalty is a share in proceeds, free and clear of all expense. Both in theory and in practice it presupposes a lease, or production under a lease, in order to obtain that profit.'

"And, it is also there further stated that: 'Regarding the proper meaning of the term "royalty," the Supreme Court of Kansas has said: "The ordinary and legal meaning of the word "royalty," as applied to an existing oil and gas lease, is the compensation provided in the lease for the privilege of drilling and producing oil and gas, and consists of a share in the oil and gas produced. It does not include a perpetual interest in the oil and gas in the ground.'

"And also that: 'The Supreme Court of Montana says of the word "royalty": 'The word has a very well understood and definite meaning in mining and oil operations. As thus used, it means a share of the product or profit to the owner of the property.' Royalty proper consists of a share of the oil and gas produced, but does not include a perpetual interest therein.

"And this author further states that: 'A royalty proper is participation in the proceeds derived under the terms of the lease. A mineral deed is not a "royalty" but is an evidence of mineral ownership, or the rights thereto, which interest may or may not produce a royalty under an existing or subsequent lease.'

"In other words, the distinction is to be kept clearly in mind between the thing itself, that is to say, minerals in place, and the proceeds thereof."

An annotation to this case appearing in 4 A. L. R. 2d 497, sums up the question in these words: "In its original and still proper use, 'royalty' has reference to a right to share in production, rather than to title to oil or gas in place, for which reason a mineral deed is ordinarily distinguished from a royalty deed."

Testing now the effect of the reservation by the foregoing announcements, we have, as a matter of logic and reason, the following results:

The provision is not a conveyance of minerals in place. It does not purport to reserve any interest in the minerals in place, or any interest in the minerals "in, on and

under" the land. It reserves a share of the production and nothing more. In the case of Palmer v. Crews, supra, the Court said "it is conceded" that a royalty interest is a share in the production. It was there further said: "Royalties in oil are usually some share in the oil produced."

The grantors did not reserve any right to lease, or receive delay rentals, or bonus money, or go upon the premises and explore for or produce oil. They reserved one right, and that was the right to share in the production if and when production was had. That right is a royalty right. The holder of a mineral interest has the right to go upon the premises and explore for and, if found, produce, oil and gas therefrom. Glassmire, supra, Section 58, says: "Oil royalty is payable to the lessor either in kind, that is in oil, or it is delivered to his credit by the lessee, free of cost in the pipe line to which the wells are connected. Under the provisions of the older lease forms the royalty oil may be separated and delivered to the tanks of the lessor and sold or utilized by him at his discretion." The grantors here evidently did not wish to construct pipelines, or tanks, of their own, so they provided that the oil and gas, if and when produced, should be delivered to tanks and pipelines in the customary manner.

As bearing upon what the parties thought their rights were, it might be stated that the deed containing the reservation under consideration was executed October 31, 1927, by J. P. Fraim, Henry Mounger, Sr., and Henry Mounger, Jr. to Albert W. Lee, and conveyed eighty acres of land located in Marion County, Mississippi. The bill herein was filed by Pittman in January 1957. During that time the parties claiming through the reservation never attempted to lease, explore, or go upon the premises, which was in accord with the rights of a royalty, whereas Pittman, more than once, had executed mineral leases on the lands, and had collected bonus money and

delay rentals thereon, which exclusive control over such minerals was contrary to the rights of appellants had they owned a part of the minerals in place, but not contrary to such rights as owners of royalties.

It might be noted also that the royalty reserved was one-eighth of what might be produced and delivered into pipelines and tanks in the customary manner. That phrase is significant in two aspects, one is that.the one-eighth is the usual royalty reservation, the other is the interest of appellants attach when the oil or gas is detached,—lifted from its natural position and begins its transportation to the lines and tanks. ''Produced'' has quite a different meaning from ''found'' or ''discovered.'' ''Found oil'' would be ''known'' or ''discovered oil.'' It might never be produced. ''Produced'' means the oil has been severed, taken out of its natural position. In Westbrook v. Ball, supra, this Court, speaking of rights of royalty owners, said: ''A royalty owner has none of these rights but only has the right to share in the minerals when produced.'' That is exactly what appellants have here. This Court has already said the word ''production'' is applicable to describe a royalty interest. We repeat ''In the outset, it is to be conceded that a royalty is an interest in real estate, entitling the royalty owner to a share in the production of oil, gas, or other minerals therefrom.'' Palmer v. Crews, supra.

In other words, a mineral interest is a present vested interest in the minerals in or under the ground. The holder has an interest whether the oil is ever produced or not. Royalty owners are vested with an interest only when the oil or gas is severed from its natural state and is produced as prescribed in the reservation.

The reservation is: ''We do hereby reserve for ourselves, and heirs and assigns, one-eighth of all the oil and gas which may be produced from said lands to be delivered in tanks and pipelines in the customary manner.'' I

think the reservation means exactly what it says.   No strained construction is necessary.

*McGehee, C. J.,* and *Arrington, J.,* join in this Dissent.