ETHRIDGE, Chief Justice.
Thelma Smith Gardner and others, appellants, brought this suit in the Chancery Court for the Second Judicial District of Jones County against appellees, Elizabeth Smith, Rosalind Smith Collins, Pan-American Petroleum Corporation, and Louisiana Land and Exploration Company. It was a bill to construe a will, cancel clouds and confirm title. The issue centers around the provisions of a will, and whether it devised to Thelma Smith Gardner a mineral or non-participating royalty interest in certain land.
William Torrey Smith executed his will in 1950 and died in 1951. The will was properly probated, and the estate was administered and closed in 1952. The testator owned 630 acres of land, of which 590 acres were under an oil, gas and mineral lease at his death. Gas had been discovered and a well drilled, but it was shut in pending an available pipeline outlet.
Testator left three heirs: the appellant, Thelma Smith Gardner, a married adult; Elizabeth Smith, his widow; and Rosalind Smith Collins, who was six years old at the time of her father’s death. In 1965 Elizabeth Smith and Rosalind Smith Collins executed an oil, gas and mineral lease on all of the land, except the 40 acres devised to Mrs. Gardner. The lessee, W. H. Potts, assigned the lease to Pan-American Petroleum Corporation, which in turn assigned sixty percent of its interest to Louisiana Land and Exploration Company.
Mrs. Gardner and her lessees, the appellants, contend that under the will she was devised an undivided one-third interest in the minerals in place under all of testator’s land (630 acres). Appellees assert that Mrs. Gardner acquired a nonparticipating royalty interest under the 630 acres, plus a full mineral interest under the 40 acres specifically devised to her. The chancery court held that the will gave her only a nonparticipating royalty, not a mineral interest, except under the 40-acre tract.
The will was drafted and typed by testator’s brother, a layman. It consists of two pages. Testator devised to his wife, Elizabeth Smith, all of his personal property, including bank accounts, and 190 acres of described land, including the homesite. It then provided:
To Have and to hold for Her Life, and at Her Death the Same shall go to My *401 Beloved Daughter, Rosalind Smith, It is Under-Stood that My Beloved Wife Elizabeth Smith, Shall have the Right if She sees fit and proper to Sell the Timber, and Lease said Land and use the proseeds [sic] for Her Own-Benefit. But is not to Sell any Gas, Oil, Roylties [sic], from this above said Lands, Other than From Wells, or Mines, etc.
Paragraph three devised 400 acres of land to his then six-year-old daughter, Rosalind Smith. It further stated:
And it is Further My Will that No Gas, Oil, Roylties [sic], is to be Sold from these above said Lands to Rosalind Smith, Other than from Wells, or Mines etc.
It is Further My Will that in case of the Death of My Wife, Elizabeth Smith, Before the Death of Rosalind Smith, That all this property shall Descend to Rosalind Smith, and in Case of the Death of Rosalind Smith, Before the Death of Her Mother Mrs. Elizabeth Smith, The Property herein Bequeathed to Her Shall go to Her Mother Provided the Said Rosalind Smith, Shall Have No Heir or Heirs of Her Body at that Time, But in Case She does have Heir or Heirs of Her Body at Her Death the Property Shall go to the Heir or Heirs of Her Body.
The 190 acres containing the homesite, devised to the widow, was a parcel adjoining the 400 acres left to Rosalind.
Paragraph four devised to Thelma Smith Gardner, testator’s married daughter, a life estate in 40 acres of land, not contiguous to the other devised property, with remainder to the heirs of her body. She was given a power to lease and to receive the proceeds. The will then stated:
And it is Further My Will that My only Three (3) Heirs, My Beloved Wife, Elizabeth Smith, and My Two Beloved Daughters, Rosalind Smith and Thelma Grace Smith, Lowe, Gardner, Shall Shear EQUIL [sic], One Third Each (1/3) between them, in all Gas and Oil and other minerals and Royalties that is or May be PROUDEOSED [sic] from any Well or Wells or Mines, etc. From the Land Above Described to them, Over the ENTIRE Six Hundred, Thirty (630) Acres of Land.
In short, each of the three beneficiaries in this will was devised a life estate in the several parcels, with certain stated powers. Mrs. Gardner’s parcel was to go to her children upon her death. The widow’s tract was to go upon her death to her daughter Rosalind; and the tract left to Rosalind was to go upon her prior death to Elizabeth (the widow) unless Rosalind was survived by children, in which event it was to go to those children.
The testator effectively provided in his will that Mrs. Gardner could not become involved in the ownership of possessory rights in the land devised either to his widow, Elizabeth, or to his daughter, Rosalind ; nor could they acquire possessory rights in the 40 acres devised to Mrs. Gardner. Apparently he wanted the pos-sessory rights in the land devised to Elizabeth and Rosalind to be interchangeable and subject to inheritance between those two takers as mother and daughter. But this reciprocity was not intended by the testator among Mrs. Gardner and his other two heirs at law. The separation, and distinction, between the possessory rights of Elizabeth and Rosalind, and on the other hand Mrs. Gardner, is significant in the interpretation of this will.
A royalty interest in oil and gas is a nonpossessory interest, since the royalty owner has no right to go upon the land to explore for, capture and remove the minerals. See Mounger v. Pittman, 235 Miss. 85, 108 So.2d 565 (1959); Westbrook v. Ball, 222 Miss. 788, 77 So.2d 274 (1955). If Smith had intended that his three beneficiaries should share ownership in the minerals in place equally, he could have plainly provided therefor, but he did not. To the contrary he indicated a different plan of distribution of his estate.
*402 The will reflects the testator’s belief that his primary responsibility was to his widow and minor child, rather than to his married, adult daughter. The land was under an oil, gas, and mineral lease, and a gas well had been drilled at a site on the land devised to his widow. Moreover, Elizabeth Smith was given the power to “lease” the land devised to her, and, we think, that word in this context includes the power to lease the mineral as well as the surface estate. A similar power to lease the 40 acres was given to Mrs. Gardner.
With these aspects of the testator’s will and apparent primary purposes in mind, the pertinent portion of the last paragraph of this instrument can be more confidently interpreted. It provides that testator’s three heirs “ * * * Shear [sic] EQUIL, [sic] One Third Each (1/3) between them, in all Gas and Oil and other Minerals and Royalties that is or May be PROU-DEOSED [sic] from any Well or Wells or Mines, etc., From the Land Above Described to them, Over the ENTIRE Six Hundred, Thirty (630) Acres of Land.”
Although conceding that the entire will must be considered, appellants take the position that the foregoing clause was a gift of an outright mineral interest, and that the phrase “ * * * and Royalties that is or May be PROUDEOSED [sic] * * after the word “Minerals,” merely indicates that testator wanted to be certain that Mrs. Gardner also shared in the proceeds from the well on the land left to his widow.
The phrase “ * * * in all Gas and Oil and other Minerals and Royalties * * * ” is ambiguous, but it reflects that the testator was thinking at least partly of royalties. Moreover, the succeeding phrase, “ * * * that is or May be PROUDEOSED [sic] from any Well * * * ” ordinarily does not create a mineral but a royalty interest. 1 Williams and Meyers, Oil & Gas Law § 304.6 (1970). Yet it also cannot have a certain meaning under all circumstances; it must be interpreted in context. See 1 Williams and Meyers, Oil & Gas Law §§ 304.5-304.7 (1970). This phrase reflects that the testator was aware that a producing well (shut-in) was on the premises and that he was referring partly to that production from which a royalty was payable. Furthermore, separation of the possessory rights in the 590 acres (devised to the widow and Rosalind) from the interest given Mrs. Gardner, is further evidence of an intent to deny the latter possessory rights in the 590 acres. All of these considerations point to the proper construction of this devise to Mrs. Gardner as being one of a one-third nonparticipating royalty interest. See 38 Am.Jur.2d, Gas and Oil §§ 23-27 (1968). The result is that each of the three devisees share equally in the royalty from all of the land, and each owns the minerals and the right to lease them under the land devised to her, subject to the remainder estates.
Mounger v. Pittman, 235 Miss. 85, 108 So.2d 565 (1959), is distinguishable. It involved the construction of a reservation in a deed of “one-eighth of all the oil and gas which may be produced.” The land was not under lease and there was no production. Since the deed did not provide that production would be cost free and did not specifically convey to grantee the right to drill and produce the one-eighth interest reserved, the latter was an estate in the oil and gas in place.
Affirmed.
RODGERS, JONES, BRADY and SMITH, JJ., concur.