# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 94-CA-00004-SCT

*SHELL OIL COMPANY, SHELL WESTERN E & P, INC., AND SHELL ONSHORE PARTNERSHIP*

*v.*

*ANDERSON TULLY COMPANY*

**THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-A**

| | |
|---|---|
| DATE OF JUDGMENT: | 11/23/93 |
| TRIAL JUDGE: | HON. HYDE RUST JENKINS II |
| COURT FROM WHICH APPEALED: | JEFFERSON COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANTS: | A. JERRY SHELDON |
| | SI M. BONDURANT |
| ATTORNEYS FOR APPELLEE: | R. WILSON MONTJOY II |
| | KATHRYN R. GILCHRIST |
| | ALLEN LAMAR BURRELL (WITHDRAWN) |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | AFFIRMED - 1/30/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE PRATHER, P.J., PITTMAN AND SMITH, JJ.**

**SMITH, JUSTICE, FOR THE COURT:**

Shell Oil Company and affiliates pray for relief from the judgment of the Jefferson County Chancery Court, claiming that the chancellor erred in awarding Anderson Tully Company $214,524.73 plus prejudgment interest. The award was based upon charges which the chancellor ruled were wrongfully attributed to Anderson Tully, stemming from the development and drilling of a gas well on property which Shell had leased from Anderson Tully and then relinquished the lease prior to actual production. Shell claims that because they relinquished the lease, the parties are in a cotenancy and, as such, Shell is entitled to recoup development costs from its cotenants. Anderson Tully argues that the relationship between itself and Shell at the time pertinent to the suit was that of lessor and lessee and as a result the terms of the lease control whether or not Shell can recoup development costs from Anderson Tully.

This Court affirms the judgment of the chancellor in this case.

## FACTS

Until March, 1983, Shell held a tract of land under lease from Anderson Tully. The lease provided for a royalty to the lessor of one-eighth of the amount realized by the lessee from gas sales. On August 20, 1981, the Mississippi Oil and Gas Board entered an order creating the Shell-Mann 320-acre Gas Unit. That order integrated the interest of all the owners therein, including the interest of those who had not voluntarily contributed their interest to the unit, ordering that the land be developed as a single drilling and production unit for the sake of resource conservation. The involuntary joinder of property owners is known as "force pooling" or "force integration." A portion of the Anderson Tully mineral interest covered by the lease to Shell was included in the Shell-Mann Gas Unit. The well was completed on November 2, 1981, and then shut in awaiting a pipeline connection. Under the lease, Shell was required to pay Anderson Tully shut-in royalties. Anderson Tully did not feel that the shut-in royalties were timely paid and demanded a release. Shell relinquished the lease on March 25, 1983.

When the pipeline connection to the well was completed, and the well began to produce, Shell deducted from Anderson Tully's revenues that portion of drilling and completion costs attributable to the Anderson Tully tract which Shell had previously incurred while it held the tract under lease, $214,524.73. Anderson Tully requested and received an accounting from Shell as to the well's drilling and operating costs in September, 1984. Apparently dissatisfied with Shell's accounting, Anderson Tully filed a lawsuit demanding an equitable accounting in March, 1985. Anderson Tully alleged that Shell was not entitled to offset Anderson Tully's pro rata share of well costs against Anderson Tully's interest in production because at the time the well was drilled, completed and shut in, Shell held a valid oil and gas lease covering Anderson Tully's mineral interest in the unit.

Anderson Tully filed a Motion for Partial Summary Judgment requesting the Chancery Court of Jefferson County to declare as a matter of law that Shell could not charge Anderson Tully for expenses incurred by Shell under a lease with Anderson Tully prior to March 25, 1983, and that Shell was bound to pay prejudgment interest on costs improperly withheld from the date of such withholding up to the date of actual payment.

The chancellor concluded that Shell must repay to Anderson Tully the amount of $214,524.73 previously deducted by Shell, plus interest from the date that each payment was deducted. Subsequently, Shell petitioned for reconsideration, raising as a new contention that it was entitled to deduct Anderson Tully's proportionate costs because Anderson Tully's interest was pooled into the unit and was thus subject to costs incurred by Shell as operator of the unit. The chancellor apparently disagreed and overruled Shell's Motion for Reconsideration.

Shell appeals.

## DISCUSSION OF LAW

Shell cites five issues for this Court's consideration. In the interest of conserving space and time, two of those issues have been combined, and the issue of unjust enrichment is meritless and thus, will not be addressed by this Court.

## I.

**WHETHER A VOLUNTARILY POOLED LESSEE WHO HAS THE DUTY TO PAY DRILLING COSTS WHEN INCURRED, AND WHO THEREAFTER VOLUNTARILY RELINQUISHES THE LEASE, CAN THEN CHARGE THE LESSOR FOR THOSE DRILLING COSTS PREVIOUSLY PAID.**

From the outset, this case turns upon the nature of the relationship between the parties at the time the costs were incurred, not at the time in which they were deducted. Shell insists that the change in the nature of the relationship with Anderson Tully from lessor/lessee to that of a cotenancy entitles Shell to recoup previously incurred drilling costs. If Shell's relationship with Anderson Tully had been a cotenancy from the beginning, it would have no problem recovering the costs which it had incurred in drilling the well. Unfortunately for Shell, from the beginning and at all times relevant to this lawsuit, its relationship with Anderson Tully was that of lessor and lessee of a mineral interest in acreage which it contributed to a unitized well. Shell had leased Anderson Tully's mineral interest in Anderson Tully's property in exchange for a one-eighth royalty and then force integrated the remaining owners in the area who did not voluntarily contribute their acreage to the pool pursuant to Miss.Code Ann. § 53-3-7. A royalty is defined to be: " 'A share of the product or profits reserved by the owner for permitting another to use or develop his property.' From this definition, which has been accepted by the courts, it is obvious that a royalty is a share in proceeds, **free and clear of all expense**. Both in theory and in practice it presupposes a lease, or production under a lease, in order to obtain that profit." ***Palmer v. Crews***, 203 Miss. 806, 820, 35 So. 2d 430, 435 (1948); quoting Glassmire, *Oil & Gas Leases & Royalties*, (Second Edition), at page 63. (emphasis added).

Thus if Shell held a lease from Anderson Tully in exchange for a royalty, it could have no expectation that Anderson Tully would share in the costs of production. Therefore the chancellor was correct in holding Anderson Tully liable only for those production, development and marketing costs developed after Shell had relinquished the lease.

Shell additionally argues that it should be allowed to charge Anderson Tully with production costs incurred under the lease because the terms of the lease do not preclude Shell from doing so. ***Superior Oil Co. v. Beery,*** 216 Miss. 664, 674, 63 So. 2d 115, 118 (1953), says that absent ambiguity, we must apply the language of the provisions in the contract as written and agreed on by the parties thereto, subject to the applicable statutes for the conservation of oil and gas and the orders, rules, and regulations of the State Oil an Gas Board, promulgated and adopted pursuant to such statutes. In other words, Shell cannot charge Anderson Tully with costs properly payable by Shell just because the lease does not say they cannot do so. Accordingly, this Court finds that this issue is meritless.

## II.

**WHETHER THE FORCE POOLING ORDER OF THE STATE OIL AND GAS BOARD WAS AN *IN REM* ACTION AUTHORIZING SHELL TO RECOUP ITS COSTS OF DRILLING AND COMPLETING THE GAS WELL OUT OF THE WELL'S PRODUCTION.**

While Shell is correct in asserting that a force pooling order is an *in rem* action, they are wrong to assert that the nature of the action in any way changes the obligations of any of the property owners.

While cotenants are all responsible for sharing in the costs of production, Anderson Tully was not a cotenant until the lease expired. So the real question is whether or not a lessor of a force integrated unit should be required to pay production costs incurred and payable by the lessee absent contractual authority.

Shell claims that Anderson Tully's interest at the time of the lease was that of a possibility of a reverter. But a possibility of a reverter is an unrealized interest, and was such at the time that the costs were incurred. It would be inequitable to charge an unrealized interest for production costs properly payable by the holder of the right of production under that interest. At the time the force pooling order was entered, Shell owned the right to produce as to Anderson Tully's mineral interest by virtue of its lease from Anderson Tully. By the time production actually started and Shell became obligated to account, Anderson Tully owned the right to produce as to its minerals. Since a change in ownership does not terminate a force pooling order, Anderson Tully became liable for production costs incurred only from the time the lease terminated. ***Superior Oil Co. v. Beery***, 63 So. 2d at 129; Kramer & Martin, *The Law of Pooling and Unitization,* § 15.04, p.15-12 (1993). Therefore, this Court finds this issue to be meritless.

## III. WHETHER AN AWARD OF PREJUDGMENT INTEREST IS PROPER IN AN EQUITABLE ACCOUNTING IN THE ABSENCE OF ANY CONTRACT, STATUTE OR CONDUCT BY THE ACCOUNTING PARTY THAT PROVIDES FOR INTEREST.

Under ***Murphree v. Aberdeen-Munroe Hospital***, 671 So. 2d 1300, 1304-05 (Miss. 1996), the chancellor is free to award prejudgment interest as he sees fit because the amount of the award was liquidated (a known quantity) at the time that the claim was first made, or if the claim was frivolous or in bad faith. Given that the claim was liquidated, the chancellor's discretion to award prejudgment interest will remain undisturbed by this Court. Furthermore, the reason that prejudgment interest is awarded is to compensate the prevailing party for the time value of their money dating back to the time when they should rightfully have had use of it. To decline to do so allows Shell to retain any interest that they may have gained in the interim, especially given this case where the interim has been nearly thirteen years.

**CONCLUSION**

We affirm the judgment of the chancellor because as lessor of the mineral interest at the time that the charges were accrued, Anderson Tully was not liable for production costs. The fact that the forced pooling order was an *in rem* action was insufficient to affect the lease or the rights of either party to the lease. Finally, the chancellor properly awarded prejudgment interest to Anderson Tully Company, and we affirm that award.

**JUDGMENT AFFIRMED.**

**LEE, C.J., PRATHER AND SULLIVAN, P.JJ., PITTMAN, BANKS, McRAE AND ROBERTS, JJ., CONCUR. MILLS, J., CONCURS IN RESULT ONLY.**