STATE *ex rel.* JOHN BAKER *v.* E. S. NICHOLS.

[63 South. 1025.]

1. SHERIFF AND CONSTABLES. *Office of sheriff. Code 1906, section 4664. Vacancy. Appointment. Power of governor. Constitution 1890, section 103. Disqualification. Effect of election. Quo warranto. Appeal. Questions presented for review. Pleading. Demurrer. Effect.*

The position of deputy sheriff is an office created by section 4664 of the Code of 1906 and is therein expressly designated as such, and it can therefore only be held by a qualified elector.

2. PLEADING AND DEMURRER. *Effect.*
   A demurrer to a petition admits the allegations of such petition.

3. SHERIFFS. *Deputies. Vacancy. Appointment. Power of governor.*
   Since the statutes provide no method for filling the vacancy in the office of sheriff, existing between the death of the sheriff and the election of a successor, except that its duties shall be discharged by the deputy, where there is no such deputy legally qualified to act, there exists such an emergency as contemplated by section 103 of the Constitution and the governor has the power to appoint a sheriff.

4. SHERIFFS. *Disqualification. Effect of election.*
   Where a party had not registered until a month before his election as sheriff, such election was a nullity, such party being ineligible not being a qualified voter.

5. QUO WARRANTO. *Appeal. Questions for review.*
   Upon an appeal from a judgment sustaining a demurrer to a petition for *quo warranto*, the supreme court will not consider matters not appearing in the petition.

APPEAL from the circuit court of De Soto county.
HON. N. A. TAYLOR, Judge.

*Quo warranto* by the state on the relation of John Baker against E. S. Nichols. From a judgment for respondent relator appeals.

The facts are fully stated in the opinion of the court.

*Geo. H. Ethridge,* assistant attorney-general, for the state.

The facts are sufficiently stated in the briefs of the other attorneys in the case, and as this is a case on demurrer, are sufficiently stated in the information, I desire especially to call the attention to the second paragraph of the allegation of the information "That on November 25, 1912, W. P. Harris, sheriff and tax collector of DeSoto county, Mississippi, lost his life, the office deputy in said office, E. S. Nichols, was not at that time a qualified elector of said county. He had not resided in the Hernando precinct where he then lived twelve months, and was not a registered voter of said county."

It will be readily seen that by this allegation, which is full and positive in its terms, and which is admitted by the demurrer, that Nichols was not qualified to hold the office of sheriff, or that of deputy sheriff. It follows that so far as the law was concerned the situation was the same as if the sheriff had not had a person in the office at all.

Section 103 of the state Constitution authorizes and requires the governor to fill all vacancies in any office where no other method of filling such vacancy has been provided for by the legislature. Section 4189 of the Code of 1906, provides for filling vacancies in certain cases, but a careful reading of the section will demonstrate that it provides no method for filling a vacancy where the unexpired term exceeds six months until an election can be ordered. The period that exists from the happening of the vacancy until the holding of an election, and the qualification of the officer is nowhere provided for. Therefore under the above section of the Constitution it is the duty of the Governor to fill such vacancy until a person, qualified under the law to hold office is elected and shall qualify. Section 3487 does not prevent a vacancy occurring, nor would the fact that a duly qualified and regularly appointed deputy was in the office, prevent the governor at once exercising the right of appointment to the vacant office. In fact the sureties on the bond of the deceased officer would not be liable for the acts of the deputy of the deceased officer after the governor had appointed and the appointee had qualified. In the present case the bond of the deceased officer is not liable for the default of the deputy after Baker had qualified.

Under the facts stated in the information an election was not held until the 2nd of January, 1913, which was more than a month after the death of the regular sheriff. Under the requirements of law this was about as speedy as an election could be held in any case. Therefore, the principle contended for by the appellant is important

to the public. The allegations of the information further show that when the election was held that the said Nichols could not vote in the election because he had not been registered four months as required by section 251 of the state Constitution. He was not at the time of the election a qualified voter under and within the meaning of section 250 of the Constitution. *Bew* v. *State,* 71 Miss. 1, 13 So. 868; *State ex rel.* v. *Kelly,* 81 Miss. 1. Under these authorities a man does not become a qualified elector until four months shall have expired after he has registered as such. Section 251 of the Constitution prohibits the contention of the appellee. The allegations in the information show that the appellee was registered December 2, 1912, seven days after the death of his principal and as section 242 of the Constitution requires him to make oath that he has, in good faith, been a resident of the precinct for twelve months it necessarily follows that during that period of time he could not have been a qualified voter of any other precinct. A person cannot, legally, be a resident of two different places at the same time. For a full discussion of the law bearing on residence as qualification to vote, see 10 Am. & Eng. Ency. Law, p. 596, et seq.: Counsel for the appellee seem to think if this construction were aopted that it would result in disqualifying many of the state and county officers. I do not think any such result would follow. It is conceded by all the authorities that a mere temporary removal for business or pleasure would not result in loss of citizenship or the right of suffrage where *animo revertendi* exist. Whenever, therefore, it becomes necessary for an officer to make a temporary removal for the purpose of attending to official duty he could move to the county site or any other point without losing his right to vote in the precinct of his residence. Such a move is not a change of residence in a legal sense at all. The residence is the place where a person expects to return when he is away from home. The argument of the appellee is

vain in this case because Nichols did remove from his former precinct, and in fact and intention became a resident of Hernando, Mississippi, and cannot now controvert that fact because he has sworn when he registered that he had done so *bona fide.* The ground of the demurrer which undertook to say that Baker could not raise the question of the want of qualification of Nichols is utterly without merit because the suit is brought by the district attorney in the name of the state and is signed in that capacity.

I submit that there is no sound reason why Baker could be alleged to be entitled to the office. The state may not only show that the holder is not legally qualified and is an usurper but it may also allege and prove that some other person is entitled to hold the office. This allegation is proper especially as it would save ordering an election or making a temporary appointment. The allegation could not prejudice the appellee in any respect. The suit was heard in this case in the court below at a time when Nichols was not qualified and could not have been qualified. The principle contended for is important as the court below declined to recognize the governor's right to fill a vacancy. Conditions may easily arise where the prompt exercise would be of the utmost public importance. The case should therefore be reversed.

J. B. ECKLES, for appellant.

A deputy sheriff is an officer. See section 4664, Code 1906, under the terms of which he must take and subscribe an oath "faithfully to execute the office of deputy sheriff."

"Where provision is made by statute for the position of deputy, such deputy is regarded as a public officer. 29 Cyc. 1395. See, also, *Railroad Co.* v. *Bolding,* 69 Miss. 255. In *Wimberly* v. *Boland,* 72 Miss. 241, Mr. Chief Justice COOPER says of deputy circuit clerk Hiram Creekmore: "That, by reason of his minority, he could not

have been lawfully appointed as such deputy, is not material, for a *de facto* officer is one who is such in fact but not in law, and minority is not different from any other legal disqualification.''

Was appellee a qualified elector on the 25th day of November, 1912? The petition says not; and on this, demurrer must be taken as true. Could appellee have been a qualified elector on the facts disclosed by the petition? It is respectfully submitted that he could not, for the petition states that ''on the 25th day of November, 1912 . . . . Nichols (appellee) was not at that time a qualified elector of the county. He had not resided in the Hernando voting precinct where he then lived, twelve months and was not a registered voter of said county.'' And again, the petition says: ''The said Nichols had not resided in the Hernando precinct one year until December, 1912.''

Section 241 of Constitution declares who are ''qualified electors.'' Attention is directed to the clause in this section, ''and who is duly registered as provided in this article.'' That is as provided in article 12, this article includes section 251, which provides that registration shall be good for an election to be held not less than four months after such registration.

Appellee was not a qualified elector on November 25, 1912, at the time of Harris' death; nor on December 2nd, at the time when Baker, relator, made demand upon him for the office, after qualifying under appointment by the governor; nor on January 2, 1913, at the time he received a plurality of the votes cast in an attempted election to fill the office for the unexpired term.

He was therefore during all this time merely a *de facto* officer and not entitled to hold the office against the appointee of the governor.

It would seem that all questions as to this proposition has been definitely set at rest by this court, as shown by the opinion of Mr. Chief Justice CAMPBELL in the case of

*Bew* v. *State,* 71 Miss. 1.. The attention of the court is specially called to the second paragraph on page 8.

*Lauderdale & Lauderdale* and *L. J. Farley,* for appellee.

In the discussion of this question the first thing that presents itself is: Was there a vacancy in the office of sheriff at the time German Baker was appointed to said office within the contemplation and true construction of section 103 of our Constitution, which is as follows: "In all cases; not otherwise provided for within this Constitution, the legislature may determine the mode of filling all vacancies, in all offices, and in cases of emergency, provisional appointment may be made by the governor to continue until the vacancy is regularly filled; and the legislature shall provide suitable compensation for all offices, and shall define their respective powers." Now, if this question is answered in the negative we need go no further.

As we construe this section the mode of filling vacancies is vested in the legislature, and if they have acted within the scope of their authority then the governor can act, only, in case there is an emergency.

The legislature has, assuredly, acted as to filling vacancies, etc., as shown by section 3487 of the Code 1906, which we quote: "If any state or county officer shall die having a deputy, the deputy may continue to discharge the duties of the office in the name of the deceased officer, as if he had not died, until the vacancy in the office shall be filled according to law, etc.;" and as shown by section 4189 of same Code which is as follows: "When a vacancy shall occur in any county office . . . the unexpired term of which shall not exceed six months the same shall be filled by appointment by the board of supervisors of the county, etc., and if the unexpired term shall exceed six months, the board of supervisors of the county, or the president thereof in vacation shall make an order, in

writing, directed to the commissioners of election, commanding an election to be held in the county . . . on a day named in the order to fill the vacancy."

Now in fulfillment of said section 3487 there was such a deputy in the office of sheriff, to wit, E. S. Nichols, at the time of the death of the sheriff, W. P. Harris; and the said Nichols immediately upon the death of said Harris assumed to perform the functions of the office in accordance with section 3487 of said Code, with intent and purpose, so to do, until an election could be ordered and held as required by section 4189 of said Code, therefore, we are forced to conclude that there had not arisen, in the premises, an emergency, which would authorize or justify the governor to make a provisional appointment to fill the office of sheriff, at the time he appointed German Baker to said position.

Section 103 of the Constitution does not authorize, as we contend, the governor to fill vacancies in all events; but, in case of an emergency. This brings us to the question, Was there, under the facts and circumstances of this case, an emergency?

We contend not. An emergency is defined by Webster as follows: "An emergency is an event or occasional combination of circumstances which call for immediate action or remedy, a pressing necessity."

The following is taken from 3 Words and Phrases, p. 2361: "An emergency is an uncertain or unexpected happening, an unforeseen occurrence or condition." Century Dictionary.

Under these and other definitions we contend no emergency existed in contemplation of section 103 of the Constitution, for the reason that the functions of the office of sheriff were all being carried out, so far as anything to the contrary is shown, by E. S. Nichols, deputy of W. P. Harris, in full accordance with section 3487 of the Code of 1906, which was enacted by the legislature of the state of Mississippi, for the purpose of meeting any emergencies that might arise upon the death of the sheriff or any other

county officer; and if, in the face of this statute, the governor is authorized to make provisional appointment, in such cases, and in the face of said statute 3487 then the legislature, it strikes us, did a vain thing.

These two sections, 3487 of the Code of 1906 and 103 of the Constitution should be construed together, and each in the light of the other, so that they both may stand so as to accomplish the intent of their existence, and be of effect under such circumstances, as reason and logic would call forth for their execution.

Now in reply to J. B. Eckles' brief for appellant in this case on page 3, where he says: "The chief executive of the county had fallen; the chief executive of the state whose duties it is, under section 123 of the Constitution, to 'see that the laws are faithfully executed,' under the special authority of section 103 of the Constitution, acted by filling provisionally the vacancy, until the slower machinery of the legislative law could be put into action and could evolve by election a sheriff for the unexpired term," we desire to submit that the law as to the duties of the sheriff were being faithfully and fully executed by said deputy in accordance with the slower machinery of the legislative law, by said deputy, as authorized and empowered by section 3487 of the Code of 1906, and hence, the governor was not authorized to act by appointing provisionally some one to fill the vacancy, because there was no emergency, which had arisen in the case, and the law as to the sheriff's office was being faithfully and legally performed as authorized by the legislature of the state of Mississippi as set out in sections 3487 and 4189 of the Code of 1906, see *State* v. *Lowell,* 70 Miss. 309, and *McRae et al.* v. *Swalm,* 81 Miss. 679.   Hence, we respectfully submit that the judgment of the circuit court should be affirmed.

*R. F. B. Logan,* for appellee.

The right of the deputy to hold over in the name of the deceased sheriff is recognized and strengthened by

section 893, Code of 1906, which reads as follows: "If from any cause there be a vacancy in the office of sheriff, and no deputy to act as authorized by law, in the case of the death of the sheriff, or the sheriff be a party or interested in any suit, or for either cause be incapable or unfit to execute his office in any particular case, the coroner of the county shall, during vacancy, or in the cases wherein the sheriff is disqualified or unfit to act, execute, do and perform all the duties which appertain to the office of sheriff . . . ." There was at the time of the death of the said W. P. Harris, sheriff, a coroner in said county which is evidenced by the service of process on E. S. Nichols in the lower court. Said section 893, Code of 1906 is constitutional. See *Lipscomb* v. *State,* 76 Miss. 224.

Appellee was duly and legally appointed deputy sheriff by W. P. Harris, sheriff, but if he had only been a *de facto* deputy he could have, under the law, continued the office in the name of the deceased sheriff until the vacancy in the office was filled according to law. *McRae* v. *Swalm,* 81 Miss. 679.

"In such case the deputy derives power from the statute, and not from his deceased principal . . . ." *State* v. *Lovell,* 90 Miss. 309.

In this case considerable importance is attached to section 3686 of Code 1892 and we would call the court's attention to the fact that this section 3686 is omitted in Code of 1906. On page 315 in the opinion of the court in this case we find this language, "Section 103 of the Constitution gives power to the governor to appoint, in cases of emergency, to fill vacancies, and this is ample authority for him to act where the legislature has not provided for the case in pursuance of the same section, where the legislature has executed that power, and determined the mode of filling vacancies the law must govern.

Near the bottom of page 317 same case we find this language: "Where a statute passed in pursuance of the Constitution, covers the case, it must govern."

Near the top of page 319 same case we find this language: "Where an appointment was made when no vacancy existed, or when the power to appoint did not exist, it would confer no legal rights on the appointee, as would be declared when brought to judgment before that branch of our government charged with the function and duty of finally deciding all questions arising under the Constitution and laws of the state where the rights of litigants are involved." We respectfully submit that the judgment of the circuit court is right, and ought to be affirmed.

Argued orally by *R. E. L. Morgan* and *Geo. H. Ethridge,* assistant attorney-general, for the state and *D. C. Lauderdale* and *R. L. Dabney,* for appellee.

SMITH, C. J., delivered the opinion of the court.

On November 29, 1912, W. C. Harris, sheriff and tax collector of De Soto county, died; his office deputy, E. S. Nichols, continued to discharge the duties of the office under the provision of section 3487 of the Code. Shortly after the death of Harris, the governor of the state, acting under section 103 of the Constitution, appointed relator to the vacancy in this office created by the death of Harris, and authorized him to discharge the duties thereof until the office should be regularly filled in the manner provided by law. He thereupon executed a bond and took the oath of office, but appellee refused to turn the office over to him. A special election was called by the board of supervisors for the filling of the vacancy which resulted in the election of appellee. Afterwards this proceeding was executed in the court below by the relator in order to try the right to the office, which resulted in a judgment for appellee.

The petition alleged that at the time of the death of Harris, and of the appointment of relator, appellee was not a registered voter of the county, and that at the

time of the special election held to fill the vacancy, he had only been registered one month, and in a district in which he had resided less than one year, and that therefore he was not a qualified elector. The demurrer which was interposed to this petition should have been overruled. The position of deputy sheriff is an office created by section 4664 of the Code, and is therein expressly designated as such. It can therefore only be held by a qualified elector.

Since the demurrer admits the allegation of the petition that appellee was not a qualified elector at the time of the death of Harris, it follows necessarily that he was not qualified to hold the office, and therefore was not a legal deputy; and, since the statute provides no method for filling the vacancy in the office existing between the death of the sheriff and the election of a successor, except that its duties shall be discharged by the office deputy, and there being in this instance no such deputy, there clearly existed such an emergency as contemplated by section 103 of the Constitution, and the appointment of relator was therefore valid. This being true, it is not necessary for us to decide whether his appointment would have been valid had appellee been a legally qualified deputy.

Since the demurrer also admits that appellee was not registered until one month before the election, it follows that he was not then eligible to the office, and his election was a nullity.

We gather from the briefs of counsel for appellee that he was duly registered in another district of the county, and had removed therefrom to the county seat in order to discharge the duties of deputy sheriff; and their contention is that he still remained a qualified voter without any necessity of again registering in the district in which the county seat was situated. These facts, if such they be, do not appear in the petition, and therefore are not presented to us for consideration.

*Reversed and remanded.*