LOVE, SUPERINTENDENT OF BANKS, *v.* FIDELITY & DEPOSIT CO. OF MARYLAND.

(Division A. Feb. 8, 1932.)

[139 So. 387. No. 29584.]

F. W. Bradshaw and **Flowers, Brown & Hester**, of Jackson, for appellant.

Watkins, Watkins & Eager, of Jackson, for appellee.

Argued orally by **Clyde Hester**, for appellant, and by **Ralph Avery**, for appellee.

**Cook, J.**, delivered the opinion of the court.

In November, 1930, J. S. Love, superintendent of banks, filed a petition in the chancery court of Alcorn county to effect the liquidation of the Corinth Bank &

Trust Company, which had closed its doors on account of insolvency, and, under proper orders of the court, the affairs of the said bank were placed under the control of the state banking department, with A. G. Powell as liquidating agent. Thereafter the appellee, Fidelity & Deposit Company of Maryland, filed an intervention petition in the said liquidation proceedings, praying that a decree be entered therein adjudging that the appellee had made a special deposit in said bank in the sum of thirty thousand seven hundred fifty-four dollars and ninety-eight cents, for the purpose of paying labor and material claims on a certain road project, and praying that the balance of said fund held by the bank when it closed be declared a trust fund for the payment of labor and material claims still outstanding, and that it be granted a prior lien on the assets of said bank to protect and enforce the trust character of said funds. To this petition the appellant, J. S. Love, superintendent of banks, filed a demurrer, which was overruled; and an appeal was granted to settle the principles involved.

The material facts set forth in the intervention petition are, in substance, as follows: In October, 1929, B. C. George & Co., of Corinth, Mississippi, entered into a contract with Madison county, Mississippi, to construct a certain public road in that county, known as federal-aid project No. 79-B. The appellee, Fidelity & Deposit Company of Maryland, became the surety of B. C. George & Co., and entered into bond with the board of supervisors of Madison county, as provided and required by the laws of this state, under the terms of which bond it guaranteed the faithful performance of the contract and the payment of all proper claims for labor and material arising out of said contract. This contract was completed according to its terms on or about June 23, 1930, and there was then due the said contractor a balance of thirty thousand five hundred seventy-four dollars and ninety-eight cents for current and final estimates of work

done. Prior to the completion of the contract, B. C. George & Co., had assigned all sums due it under the contract to the said Corinth Bank & Trust Company to be applied on its indebtedness to said bank; but this assignment was subject to payment of all claims for labor and material on said federal-aid project No. 79-B, for which the appellee would be liable under its bond. At the time the road contract was completed, there were numerous outstanding claims for labor and material furnished thereon, and the indebtedness of B. C. George & Co., to the said bank was in excess of the balance due it under the contract.

The Corinth Bank & Trust Company being entitled under its assignment thereof to the balance due B. C. George & Co., after all labor and material claims arising under said contract had been paid, officials of the said bank approached the appellee with a view of consummating an arrangement or agreement whereby the entire balance due B. C. George & Co., should be paid to the bank; the averments of the petition with reference to the agreement finally consummated being as follows:

"That an agreement was entered into by the Corinth Bank & Trust Company, at the instance of said bank, whereby it was to receive all sums of money paid by the state highway department of the state of Mississippi to B. C. George & Company and the Fidelity & Deposit Company of Maryland, under said contract, and preserve the same as a trust fund. The bank further contracted and agreed to pay out of such trust fund, all outstanding claims for labor and material on said Federal Aid Project No. 79-B, subject to the approval and consent of the Fidelity & Deposit Company of Maryland, and agreed that the said bank had no right to apply any part of said trust fund to the indebtedness of B. C. George & Company to said bank, until all proper claims against said bond were paid in full as above set out. That said agreement was executed by the Corinth Bank & Trust Company,

acting through F. F. Anderson, its president, on July 11, 1930, pursuant to a duly adopted resolution of the board of directors of said bank, also dated July 11, 1930; copies of which resolution and agreement are hereto attached as Exhibits 'A' and 'B' respectively, the same being hereby expressly made a part of this intervention petition, just as though set out at length in words and figures."

The resolution of the board of directors of the Corinth Bank & Trust Company, referred to in the above-quoted paragraph of the petition, a copy of which was filed as an exhibit to said petition, reads as follows:

"There was held a legally called and assembled meeting of the board of directors of Corinth Bank & Trust Company, at which all directors were present, the issuance of notice and the service of notice of call being waived.

"There was presented to the board of directors of the Corinth Bank & Trust Company the situation with reference to B. C. George & Company, and Mr. J. W. Gaulding, active vice-president of the Corinth Bank & Trust Company, lay before the directors a plan of handling the funds of B. C. George & Company, arising out of Federal Aid Project No. 79-B, consisting of an indemnity agreement to the Fidelity & Deposit Company of Baltimore, Maryland.

"The directors very carefully considered the matter and concluded that it was to the interest of the Corinth Bank & Trust Company to enter into such agreement.

"The secretary was instructed to transcribe said agreement on the minutes of the board of directors.

"It was moved, seconded and unanimously carried that the president of the Corinth Bank & Trust Company was authorized and empowered to execute said agreement with the Fidelity & Deposit Company of Maryland."

The agreement, referred to in the above paragraph of the petition, as the basis of appellee's claim that the

sum paid to the bank in pursuance thereof constituted a special deposit or trust fund for the payment of labor and material claims due by said B. C. George & Co., under the said contract, which was in the form of a letter from the Corinth Bank & Trust Company to the appellee, was filed as Exhibit C to said petition, and reads as follows:

"To the Fidelity & Deposit Company of Maryland, c/o Watkins, Watkins & Eager, Attorneys, Jackson, Mississippi.

"You are the surety on a bond to Madison county, Mississippi, and/or the state highway department of Mississippi, covering Federal Aid Project No. 79-B, constructing the road bed, bridges, etc., on the road from the north line of Hinds county, Mississippi, towards and to Canton, in Madison county, Mississippi.

"We understand that the contract has been completed and that either now, or hereafter, the state highway department, as agent for Madison county, Mississippi and the United States government, is and will be ready to pay over to B. C. George & Company, the contractors on said Federal Aid Project No. 79-B, all current and final estimates.

"We understand that there are some outstanding claims for labor and/or material on said Federal Aid Project No. 79-B, which, if established, would be claims against the bond of the Fidelity & Deposit Company.

"We understand that some of these claims are admitted and that some of these claims are denied.

"We wish to work out with B. C. George & Company, and the Fidelity & Deposit Company, and ourselves, to-wit: The Corinth Bank & Trust Company, of Corinth, Mississippi, some method by which the Fidelity & Deposit Company of Maryland will consent that the state highway department will pay the balance of the funds due to the contractors on this project over to the Corinth Bank & Trust Company of Corinth, Mississippi.

"The Corinth Bank & Trust Company is a creditor of B. C. George & Company, and holds an assignment of the funds due by the state highway department to B. C. George & Company on this project, but recognizes the fact that the assignment of the Corinth Bank & Trust Company comes behind the trust fund character of the funds still in the highway department for the completion of the project and the payment of all labor and/or material bills, and recognizes the fact that the surety has a right to have these funds treated as a trust fund to liquidate all labor and material claims before the Fidelity & Deposit Company of Maryland would have to contribute anything towards their payment.

"'In consideration of the advantages accruing to B. C. George & Company, and in consideration of the advantages accruing to the Corinth Bank & Trust Company, the Corinth Bank & Trust Company does hereby agree with the Fidelity & Deposit Company of Maryland as follows, to-wit:

"1st—The Fidelity & Deposit Company of Maryland consents to the state highway department paying over any and all funds due B. C. George & Company to the Corinth Bank & Trust Company.

"2nd—The Corinth Bank & Trust Company binds and obligates itself forthwith to pay all labor and material bills which are uncontested.

"3rd—As to the labor and material bills, whether now apparent, or yet to arise, the Corinth Bank & Trust Company binds and obligates itself to pay the same when their legality is established and the amounts fixed, provided the same is a claim for which the Fidelity & Deposit Company would be liable.

"4th—The Corinth Bank & Trust Company binds and obligates itself to defend for the Fidelity & Deposit Company any suit, or suits, wherever instituted, and to pay all counsel fees and expenses of defending said suits,

"5th—The Corinth Bank & Trust Company binds and obligates itself to hold the Fidelity & Deposit Company harmless by reason of the Fidelity & Deposit Company consenting to the delivery of these funds by the state highway department over to the Corinth Bank & Trust Company.

"6th—The Corinth Bank & Trust Company limits its obligation in this matter, however, to the amount of the funds which the state highway department pays over to the Corinth Bank & Trust Company.

"7th—The Corinth Bank & Trust Company binds and obligates itself to complete the disbursement of these funds with reasonable dispatch, taking into consideration that some of the claims may be contested and that it will, whenever called upon by the Fidelity & Deposit Company of Maryland, inform the Fidelity & Deposit Company of Maryland of the status of the liquidation of the account.

"Witness the signature of the Corinth Bank & Trust Company, by its president, this the 11th day of July, 1930, and after having been authorized by the board of directors of the Corinth Bank & Trust Company.

"CORINTH BANK & TRUST Co., Corinth, Miss.
"[Seal]
"By F. F. ANDERSON, President."

The petition further averred that, after the consummation of the aforesaid agreement, the state highway department issued and delivered to appellee's attorney vouchers for the balance of thirty thousand seven hundred fifty-four dollars and ninety-eight cents due under said contract, payable to B. C. George & Co., and the appellee, and that, acting upon the resolution and agreement of the said bank, the appellee indorsed the said vouchers and consented and agreed for said funds to be deposited in the Corinth Bank & Trust Company, subject to all the terms and conditions of said resolution and agreement, and with the express understanding that

such money would be treated as a trust fund and special deposit for the purpose of paying outstanding labor and material claims, as provided in said agreement, and that such vouchers were accepted by the Corinth Bank & Trust Company and deposited as special deposits with a trust fund character. The petition also averred that, out of the sum so deposited in said bank as a trust fund, labor and material claims in the sum of twelve thousand five hundred thirty-one dollars and nineteen cents had been paid before the bank closed, but that there were still outstanding claims for labor and material the amount of which could not be finally determined until the expiration of the statutory period of one year for filing such claim. The prayer of the petition was as stated above.

From a careful examination of the intervention petition, it appears to us that all the rights asserted by the appellee are based upon the agreement filed as Exhibit C to the petition. No other, further, or different agreement than that embraced within the terms of Exhibit C is sufficiently pleaded. While there are general charges that the Corinth Bank & Trust Company agreed to receive the money under said contract "and preserve the fund as a trust fund," that the said bank further agreed that it "had no right to apply any part of said trust fund to the indebtedness of B. C. George & Company to said bank until all proper claims against said bond were paid in full," and that the appellee "consented and agreed for said funds to be deposited in the Corinth Bank & Trust Company, subject to all the terms and conditions of said resolution and agreement," and with the express understanding that such money would be treated as a trust fund and special deposit for the purpose of paying outstanding labor and material claims, as provided in said agreement, these quoted averments are manifestly the conclusions of the pleader as to the meaning and proper interpretation of the written agree-

ment exhibited with the petition, and as such are not admitted by the demurrer.

In the intervention petition, the written agreement, Exhibit C to the petition, is construed by the pleader so as to constitute the fund in question a special deposit and trust fund, while the appellant contends that the agreement is one of indemnity merely. Before outlining the special details and terms of the agreement, there is set forth in a preamble thereto the facts in reference to the then status of the contract, and the rights and liabilities of the parties thereto, as understood by the bank, wherein it was stated that the bank desired to work out with B. C. George & Co. and the appellee a method or plan by which the balance due the contractor by the state highway department, as agent for Madison county and the United States government, might be paid over to the bank. After stating in this preamble that B. C. George & Co. was indebted to the bank, and had assigned to it the balance due under said contract, and that the understanding of the bank was that there were outstanding claims for labor and material, some admitted and others denied, which the appellee had a prior right to have paid out of the balance due the contractor, before it would be required to contribute anything towards their payment, the agreement recited that it was executed in consideration of the advantages accruing to B. C. George and to the said bank. By the terms of the agreement the appellee consented and agreed that the said highway department might pay over to the bank all funds due B. C. George & Co. under the said contract, while, among other things, the bank bound and obligated itself to forthwith pay all uncontested claims for labor and material, and all other claims for such items as soon as the legality thereof was established and the amounts fixed. The bank further obligated itself to defend for the appellee all suits arising out of said contract, and to pay all attorney's fees and expenses of de-

fending such suits, and to save the appellee harmless from any loss or liability arising by reason of its consenting to the delivery of all said funds to the bank; the bank's liability and obligation in that regard being limited, however, to the amount received by it from the state highway department.

It was evidently contemplated by the parties to this agreement that the total amount of outstanding labor and material claims was less than the balance due the contractor; otherwise the payment of this balance to the bank could not have resulted in any ultimate benefit to it. At the time the agreement was consummated, the bank was a large going institution, presumably solvent, and, as a consideration for the consent of the appellee to the payment of these funds to it, it agreed and obligated itself not only to pay all uncontested claims, but to conduct to a final conclusion, at its expense, all suits necessary to determine and establish the validity of all claims that were denied or of doubtful validity. By this arrangement the appellee was apparently relieved of all the trouble and expense of adjusting, settling, and litigating any claims for which it might be liable under the terms of its bond, and was fully protected from any loss resulting therefrom; and, so long as the bank was solvent or financially able to discharge the obligations assumed by it, the arrangement was mutually advantageous to the parties thereto.

It does not appear to us that the agreement provides for any deposit, special or otherwise, in said bank by the appellee, but that the agreement on the part of the bank was one merely of indemnity. In consideration of the appellee's consent to the payment of the funds to the bank, the bank agreed to indemnify it to the extent of the amount received against the payment of any claims for labor and material and to save it harmless from any loss or damage resulting from the arrangement. We therefore conclude that the demurrer to the intervention

petition should have been sustained, and, in line with these views, the judgment of the court below will be reversed and the cause remanded.

Reversed and remanded.