ROGERS *v.* MORGAN, et al.

No. 43097          May 25, 1964          164 So. 2d 480

*Craig Castle, K. Hayes Callicutt, Satterfield, Shell, Williams & Buford,* Jackson, for appellant.

*Wilbourn, Lord & Williams,* Meridian, for appellee, Citizens National Bank of Meridian, Trustee, et al.

*Boyd, Holifield & Harper,* Laurel, for appellees, James A. Morgan, et al.

RODGERS, J.

This is an interlocutory appeal from an order of the Chancery Court of Wayne County, Mississippi, sustaining a demurrer filed by appellee to the original bill of appellant. The appeal was allowed to this Court by the chancery court to settle the principles of law involved. The Citizens National Bank of Meridian, Trustee of the S. O. Scott Residuary Trust and Executor of the Estate of Mrs. Mary Lou Scott, Deceased, and Trustee of the Mary Lou Scott Residuary Trust, and others, filed an answer to the original bill and a cross bill after having obtained permission from the court. There was a stipulation and agreement by the attorneys that the answer and cross bill thus filed would become a part of the record of this case on appeal. There is apparently no dispute as to the interest of the Citizens National Bank of Meridian.

The complainant in the chancery court, James L. Rogers filed a bill of complaint charging that he is the owner of an undivided one-half interest in and to the oil, gas and other minerals in such property described in the bill. The deraignment of title shows the property to have been descended from a common source. It charg-

ed that on and before the 2nd day of April 1940, the property belonged to the Wausau Southern Lumber Company, a Wisconsin corporation, and that on that date it conveyed an undivided one-half interest in the oil, gas, minerals and ores in the described land. The deraignment of title outlines the various conveyances thereafter culminating in the conveyance to appellant James L. Rogers and that at the time the bill was filed Rogers owned all of the interest conveyed to W. M. Bankston, except a fractional royalty interest previously owned by C. C. Craft. This is now claimed by the intervening bank.

The conveyance from Wausau Southern Lumber Company to W. M. Bankston was as follows:

"MINERAL RIGHT AND ROYALTY TRANSFER
(to Undivided Interest)

"STATE OF WISCONSIN)
                        ss
County of Marathon        )

"KNOW ALL MEN BY THESE PRESENTS: That WAUSAU SOUTHERN LUMBER COMPANY, a Corporation of Wisconsin, with home offices at Wausau Wisconsin, Grantor, for and in consideration of the sum of Ten ($10.00) dollars, and other valuable consideration, paid by W. M. Bankston, of Clara, Mississippi, Grantee, the receipt of which is hereby acknowledged, has granted, sold and conveyed, and by these presents does grant, sell and convey unto said Grantee, an undivided one-half of the oils, gases, minerals and ores of every kind, existing in, under, or on the following described land or property, to-wit:

"The Southeast quarter of the Southwest quarter (SE¼ of SW¼), and the North half of the Southeast Quarter (N½ of SE¼) of Section twenty-eight (28),

Township eight (8) North, Range nine (9) West, Wayne County, Mississippi.

"TO HAVE AND TO HOLD the said undivided one-half interest in the above described property, unto said grantee, his heirs, successors and assigns, forever, subject, however, to the following qualifications of the Rights of the Grantee, to-wit:

"This conveyance is made subject to an existing lease by Grantor to Urban B. Hughes, dated October 6th, 1939, expiring October 6th, 1949 if maintained by Lessee. Under said lease Grantor is to receive a Royalty of one-eighth of the net proceeds from Oil, Gas and Minerals obtained from the above described lands by said Lessee, and this instrument conveys to the grantee one-half of such net proceeds that may be due to the grantor under the aforesaid lease.

"Should the above described lease expire, or lapse, grantor herein reserves the right to make future leases affecting the above described lands, so long as there shall be included therein for the benefit of the Grantee herein, his heirs and assigns, the rights and interests herein conveyed by the Grantor to the Grantee; and the Grantor further reserves the right to collect and retain all bonuses and rentals paid for or in connection with said existing lease or any future lease.

"WITNESS the signature of the Grantor, this 2nd day of April, 1940.

"WAUSAU SOUTHERN LUMBER COMPANY
"By    /s/    S. B. Bissell

"President"

It was alleged in the original bill of complaint that the interest retained by the Wausau Southern Lumber Company was thereafter conveyed through mesnu conveyances to Alexander F. Chisholm, James A. Morgan, William A. Garner, Robert E. Garner and Jane G.

Head, and that the last three named persons leased the property here involved to Chisholm and Morgan, the two first named owners, for a one-eighth royalty interest.

It is charged that this lease is between cotenants and prevents appellant from obtaining the maximum royalty being paid in the field on any lease "covering his undivided one-half interest." It is also alleged that the above-named cotenant "could not lease to each other to the appellant's detriment and thus keep appellant from receiving the maximum royalty due on his undivided one-half mineral interest." It is charged that fifty percent royalty can be obtained on a lease covering the lands here in question. Appellant charged that he was willing and able to pay his pro rata share of all development costs, bonuses, and rentals that might be due.

It is also alleged that a producing oil well is located less than 900 feet from the exterior boundary of the lands here involved, and that the complainant, appellant here, is suffering an irreparable damage; that the lands here involved are being drained by this producing well; that the lease above-mentioned was not made in good faith, and was without consideration; that appellant was willing to have his undivided one-half mineral interest covered by a lease as long as it provided for the maximum royalty payable in the area. It is also alleged that the defendants owe complainant the highest degree of care and utmost fair dealing, and diligence to obtain the maximum royalty being paid in the area. Appellant prays that a receiver be appointed to protect the interests of all parties.

The original defendants then filed their joint answer and demurrer. The demurrer was heard separately from the bill and sustained by the Chancellor.

The appellant insists that this Court should reverse the order of the chancellor because the demurrer ad-

mits the allegations of all facts properly pleaded, and that the original bill alleges, among other things, that the oil well located 900 feet from the equity or boundary of the land of the complainant is draining the lands here involved, and that the appellant, without the aid of the chancery court, is helpless to do anything to protect himself against the irreparable injury being suffered; that the defendants owed complainant the highest degree of care and good faith, and in support of this argument, the appellant cites the following cases: Covington v. Carney, Exec., 242 Miss. 464, 135 So. 2d 192; Dabney Foundation, Inc. v. Perry, Exec., 223 Miss. 721, 79 So. 2d 445; M. L. Virden Lumber Company, Inc. v. Stone, 203 Miss. 251, 33 So. 2d 841; Williams v. Williams, 185 Miss. 53, 187 So. 209; and State v. Nichols, 106 Miss. 419, 63 So. 1025.

██ █ We agree with the principle announced in these cases, and with the rule announced by Griffith, Miss. Chancery Practice, §286, p. 285, as follows: "The demurrer then, is a pleading by which the defendant challenges the sufficiency of the bill in substance, or in form, and presents to the court the question of law as to whether upon such a bill the defendant should be required to plead further; and by which, for the purpose of said challenge and of the argument of said test in law, all the facts of the bill well pleaded are, for the time being, admitted."

██ █ In the instant case, however, it appears to us (with the exception to be discussed later) that the allegations pointed out by the appellant, and set out in the original bill, are largely conclusions of the pleader based upon an interpretation of the conveyance under which the appellant claims. However, conclusions of a pleader are not admitted, nor confessed by, a demurrer. See Love, Supt. of Banks v. Fidelity & Deposit Company of Maryland, 162 Miss. 532, 139 So. 387.

After a careful examination of the pleading and authorities cited by the parties in their briefs, we have come to the conclusion that the solution to the problem here presented lies in an interpretation of the conveyance from the Wausau Southern Lumber Company to W. M. Bankston, supra. There are several cases of interest on this question. In the case of Mounger, et al. v. Pittman, 235 Miss. 85, 108 So. 565, this Court said: "The distinguishing characteristics of a non-participating royalty interest are: (1) Such share of production is not chargeable with any of the costs of discovery and production; (2) the owner has no right to do any act or thing to discover and produce the oil and gas; (3) the owner has no right to grant leases; and (4) the owner has no right to receive bonuses or delay rentals. Conversely, the distinguishing characteristics of an interest in minerals in place are: (1) Such interest is not free of costs of discovery and production; (2) the owner has the right to do any and all acts necessary to discover and produce oil and gas; (3) the owner has the right to grant leases, and (4) the owner has the right to receive bonuses and delay rentals. Westbrook v. Ball, 222 Miss. 788, 77 So. 2d 274; Palmer v. Crews, 203 Miss. 806, 35 So. 2d 430, 4 A.L.R. 2d 483."

In the light of this case, and an examination of the Bankston instrument, supra, we find that: (1) such production is not chargeable within any of the cost of discovery and production. This is indicated and set forth in said instrument by the provision appearing in the last three lines of the fourth paragraph that this instrument conveys to the grantee one-half of such *"net proceeds"* that may be due to the grantor under the aforesaid lease. (Emphasis supplied.) (2) The owner has no right to do any act or thing to discover and produce oil and gas. (3) The owner has no right to grant leases; the grantor specifically reserves in the conveyance in question the right to make future leases

affecting lands. (4) The owner has no right to receive bonuses or alleged rentals, because the grantor in said instrument reserved the right to collect and retain all bonuses and rentals for the existing lease or any future leases. On the other hand, this conveyance contains all of the distinguishing characteristics of a non-participating royalty interest.

In the case of Texas Gulf Producing Company v. Griffith, 218 Miss. 109, 65 So. 2d 447, we said on the suggestion of error, reported in 65 So. 2d 834, that ''Applying these rules of construction to the instrument under review, we find no difficulty in determining the instrument to be a royalty conveyance and not a mineral conveyance. The parties themselves have denominated the instrument a 'royalty deed.' The granting clause of the instrument is expressly made subject to the terms, conditions, and reservations thereinafter mentioned. The instrument reserves in the grantors the exclusive right to lease the lands therein described for oil and gas purposes. All bonus money paid for future leases and all delay rentals under any oil and gas lease on the lands are reserved to the grantors. In granting future leases, the grantors are required under the expressed terms of the instrument to reserve as royalty not less than 1/8 of all of the oil and gas produced and saved from the land. It is expressly declared in the instrument that it is the intention of the parties thereto that the grantee shall be entitled to receive one-half of all oil and/or gas run to the credit of the royalty interest reserved under and by virtue of any oil and/or gas lease in force or subsequently granted. Thus it is manifest from the entire instrument and the plain language thereof that the parties intended by said instrument to vest in the grantee a royalty and not a mineral interest.''

In the case of Berry v. Luckett, 248 Miss. 99, 158 So. 2d 706, this Court said: ''We are of the opinion that there are in the deed of Berry to Cook no repugnant

clauses nor inconsistent provisions. All provisions may be harmonized; none need be rejected; and effect may be given to all. In such a situation, where the intention is plain, rules of construction cannot be invoked. Moss v. Jourdan, 129 Miss. 598, 92 So. 689; Federal Land Bank of New Orleans v. Cooper, 190 Miss. 490, 200 So. 729; Dale v. Case, 217 Miss. 298, 64 So. 2d 344, 37 A. L. R. 2d 811; Martin v. Adams, 216 Miss. 270, 62 So. 2d 328.''

■■■ ■ In construing deeds, it is necessary under well-recognized rules of construction that they be considered as a whole, and the intent of the parties be gathered from the plain and unambiguous language contained therein. In 26 C. J. S., Deeds, § 84, p. 822, we find the following language: ''* * * a deed must be construed as a whole, without separating it into its formal parts. The intent must primarily be gathered from a fair consideration of the entire instrument and the language employed therein * * *''. See Texas Gulf Producing Company v. Griffith, supra.

This Court has repeatedly held that the meaning of the language and intention of the parties to be determined by the Court is to be found in the language used in the instrument. See Goff v. Avent, 122 Miss. 86, 84 So. 134; Gulf & S. I. R. Company v. Patten, 180 Miss. 756, 178 So. 468; Ford v. Jones, 226 Miss. 716, 85 So. 2d 215.

■■■ We believe, the rule of construction, that where two clauses of the deed are repugnant, the first must prevail, and that an attempted reservation is void when repugnant to the granting clause, cannot be invoked here, because — from an examination of the whole instrument — the intention of the parties is plain, as shown by the conveyance. This Court has held in many cases that the construction of the deed should be upon the entire instrument and each word and clause therein should be reconciled and given a meaning if it can be

reasonably done. Gulf & S. I. R. Company v. Patten, supra; Sumter Lbr. Co., Inc. v. Skipper, 183 Miss. 595, 184 So. 296, 184 So. 835; Richardson v. Moore, 198 Miss. 741, 22 So. 2d 494; Salmen Brick & Lbr. Co., Ltd. v. Williams, 210 Miss. 560, 50 So. 2d 130.

We have, therefore, reached the conclusion from the foregoing authorities that the instrument above set out from Wausau Southern Lumber Company to Bankston, supra, conveys an undivided one-half of a one-eighth or a one-sixteenth of the gross production under the lease to Hughes, provided this lease was maintained, and one-half of such one-eighth royalty, when and if leased to others. The instrument provides that in the event the Hughes lease should expire or lapse, the grantor reserves the right to make future leases affecting the described land so long as there should be included therein for the benefit of the grantee the right and interest therein conveyed. This clearly means a one-half of a one-eighth royalty the grantor has contracted to receive from Hughes or others to whom the grantor or his successors in title may lease in the future.

The right to make future leases affecting land, the right to collect and retain all bonuses, and rentals paid for and in connection with the then existing lease or any future leases, reserves to the grantor all interest in the estate except the royalty interest of one-sixteenth of all oil, gas and other minerals, produced from the lands involved, conveyed to the grantee.

The allegation in the original bill that a producing oil well was located within 900 feet of the land here involved and was draining the oil from the lands of the complainant has been considered by this Court, together with the allegation that the holders of the executive right to lease the lands of the royalty owner, complainant, is in the nature of a trust relationship, and that the holder of the executive right to lease owes the royalty owner the utmost fair dealings, good faith,

care and diligence to lease the property for the benefit of all concerned. (See: (Protection of term royalty owner) Williams and Meyers, Oil and Gas Law, § 337, p. 189. We do not pass upon this question at this time, however, in view of the allegation in the original bill that "in August 1962, James A. Morgan and Alexander L. Chisholm drilled an exploratory well upon the lands here in question. Said well encountering numerous sands capable of commercial production * * *", and further, the record disclosed that this bill was filed September 1962, less than a month after the discovery well was brought into production. It is therefore obvious the bill was prematurely filed insofar as it seeks to force the executive owners to lease or explore the property.

We are therefore of the opinion that the order of the chancery court sustaining the demurrer should be affirmed.

The chancery court has not passed upon the relief sought in the cross bill of the Citizens National Bank of Meridian, therefore the case will be affirmed as to the order of the chancery court sustaining the demurrer, but will be reversed for further proceedings upon the answer and cross bill still pending in the chancery court.

Affirmed in part and reversed for further proceedings.

*Lee, C. J., and Ethridge, Gillespie and McElroy, JJ.,* concur.