## IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2020-CA-00389-COA

**JOE MICHAEL COLEMAN**                                                    **APPELLANT**

**v.**

**THOMAS McKINNEY COLEMAN AND LARRY**                    **APPELLEES**
**REDELL COLEMAN, BY AND THROUGH HIS**
**CONSERVATOR, GREG YOUNGER**

DATE OF JUDGMENT:                    12/03/2019
TRIAL JUDGE:                              HON. STEPHEN TRAVIS BAILEY
COURT FROM WHICH APPEALED:    ALCORN COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT:         GREGORY D. KEENUM
ATTORNEY FOR APPELLEES:         MICHAEL D. CHASE
NATURE OF THE CASE:               CIVIL - REAL PROPERTY
DISPOSITION:                         REVERSED AND RENDERED - 08/31/2021
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE CARLTON, P.J., WESTBROOKS AND EMFINGER, JJ.

### WESTBROOKS, J., FOR THE COURT:

¶1.    This appeal arises from an action to quiet and confirm title for a property dispute

concerning "the McPeters Hill property."  The trial court found that Evelyn Coleman,

Thomas McKinney Coleman, Joe Michael (Mike) Coleman, Walter (Frazier) Coleman, and

Larry Redell Coleman all agreed that Evelyn properly deeded the McPeters Hill property to

Thomas, though she only held a life estate interest. Mike appealed the decision. Finding

error, we reverse and render.

### FACTUAL AND PROCEDURAL HISTORY

¶2.    On March 4, 1974, Thomas Hill Coleman (Coleman) became the owner of the

McPeters Hill property, which is comprised of two adjacent twenty-acre tracts of land situated in Alcorn County. Coleman was Evelyn's husband and father to all four of their sons: Thomas, Mike, Frazier, and Larry. Coleman died testate in 1977. After his death, Thomas served as the executor of Coleman's estate during probate proceedings. It is undisputed that Coleman's Last Will and Testament devised a life estate in several tracts of real property, including the subject property,[1] to Evelyn with the remainder interests being equal in the four sons as tenants in common. In 1978, Thomas signed and conveyed an executor's deed, which stated:

> I, Thomas McKinney Coleman, executor of the Last Will and Testament of the Estate of Thomas Hill Coleman, do hereby convey and specially warrant unto Evelyn S. Coleman, for her life, and at her death, in equal shares to Thomas McKinney Coleman, Walter Frazier Coleman, Joe Michael Coleman, and Larry Redell Coleman, the following described real property to-wit:
>
> Situated in the County of Alcorn, State of Mississippi, to-wit:
>
> . . . .
>
> Tract 3:
> The West Half of the Southeast Quarter of the Southwest Quarter of Section 11, Township 2, Range 6 East, etc., containing twenty (20) acres, more or less.
>
> . . . .
>
> Tract 5:
> The East Half of the Southeast Quarter of the Southwest Quarter of Section 11, Township 2, Range 6 East, etc., containing twenty (20) acres, more or less.

Evelyn and all four sons signed this deed.

---

[1] The subject property in the will is the same property included in the executor's deed.

¶3.    On March 31, 1987, in an attempt to forgive a debt of Frazier and give equally to the other sons, Evelyn drafted an agreement that (1) forgave Frazier's debt of $10,600; (2) forgave Mike and Larry for the balances of their joint notes and their rent for 1985, 1986, and part of 1987, resulting in a forgiven debt of $21,200; (3) and gave Thomas land worth $10,600. Notably, no land was described in this agreement. However, all four sons and Evelyn signed the agreement. Attached as Appendix A to this opinion is an image of the 1987 agreement admitted into evidence. Following the 1987 agreement, Evelyn gave a warranty deed to Thomas for:

> The Southeast Quarter of the Southwest Quarter of Section 11, Township 2 South, Rage 6 East in Alcorn County, Mississippi, containing 40 acres, more or less.

Attached as Appendix B to this opinion is the image of the warranty deed signed by Evelyn and admitted into evidence.

¶4.    In December 2012, Evelyn died, and Thomas served as executor of her estate. Thomas's attorney later discovered that Evelyn only possessed a life estate interest in the subject property. In an attempt to cure the defect, Thomas's attorney sent a letter on June 17, 2013, to Frazier, Mike, and Larry asking them to quitclaim their respective interests in the subject property. Frazier conveyed his interest and signed the provided quitclaim deed. Mike and the conservator of Larry's estate refused to sign the provided quitclaim deeds. Subsequently, Mike initiated an action to quiet and confirm title.[2]

---

[2] In October 2003, Larry suffered a brain injury and as a result sustained a disability that necessitated the appointment of Greg Younger as his conservator because Larry was non compos mentis and incapable of making any business-related decisions.

3

¶5.     The matter was tried on May 23, 2019, in which the parties admitted to a mutual mistake in believing that Evelyn possessed a fee simple interest in the property. The court declared that it was the intent of the parties in the 1987 agreement to make Thomas the sole owner of the property in fee simple although Evelyn only possessed a life estate interest. The court therefore entered a judgment declaring Thomas as the sole owner of fee simple title to the McPeters Hill property. Mike now appeals.

## STANDARD OF REVIEW

¶6.     We will employ the following standards of review:

> As for questions of fact, "an appellate court will not disturb the findings of a chancellor when supported by substantial evidence unless the chancellor abused his discretion, applied an erroneous legal standard, was manifestly wrong, or was clearly erroneous." *Stanley v. Miss. State Pilots of Gulfport Inc.*, 951 So. 2d 535, 538 (¶9) (Miss. 2006). Questions of law are reviewed de novo. *Biglane v. Under The Hill Corp.*, 949 So. 2d 9, 14 (¶17) (Miss. 2007).

*Am. Pub. Fin. Inc. v. Smith*, 45 So. 3d 307, 310 (¶8) (Miss. Ct. App. 2010) (citations omitted) (quoting *Harris v. Tom Griffith Water Well & Conductor Servs. Inc.*, 26 So. 3d 338, 340 (¶7) (Miss. 2010)).

## DISCUSSION

¶7.     The issue raised before this Court is whether the trial court erred when interpreting the 1987 agreement and granting a fee simple interest in the McPeters Hill property to Thomas although Evelyn only possessed a life estate interest. Finding that the court committed error, we reverse and render.

**I.      Evelyn could not have conveyed a property interest in fee simple when only having a life estate.**

4

¶8.     The court interpreted the 1987 agreement and found it reflected an intended conveyance of the McPeters Hill property in fee simple, though Evelyn only possessed a life estate interest. *McClelland v. Bank of Clarksdale*, 238 Miss. 557, 569, 119 So. 2d 262, 266 (1960), provides:

> A life estate expressly created by the language of an instrument will not be converted into a fee or any other form of estate greater than a life estate merely by reason of there being coupled with it a power of disposition, however general or extensive. This well-recognized rule has been followed consistently in the Mississippi cases.

¶9.     In *McClelland*, a petition was filed for construction of a will jointly executed by a husband and wife. *Id*. at 563-64, 119 So. 2d at 263. "The husband predeceased his wife, and the bequests and devises by the husband gave his wife a life estate with unlimited power of disposition, with a remainder in named takers." *Id.* She did not exercise power. *Id.* at 564, 119 So. 2d at 263. The widow survived some of the remaindermen. *Id.* The main question on appeal was whether the "unlimited power of disposition enlarged the widow's life estate to one in fee simple." *Id*. Our Supreme Court held that "the widow received only a life estate, and the remainders in the second takers vested at testator's death." *Id.*, 119 So. 2d at 263-64.

¶10.     Evelyn cannot deed anything greater than what she possesses. Evelyn was conveyed a life estate in the McPeters Hill property, and her four sons were conveyed a remainder interest in a tenancy in common. The agreement did not convey any other interests in the property.  Evelyn's utilization of a warranty deed did not increase her interests in the property. A life estate simply cannot be enlarged to a fee simple through the use of a

5

warranty deed.

## II.    There was a mutual mistake among all parties to the agreement.

¶11.    Mike also argues that the mutual mistake of the parties invalidates the agreement. The parties all admit that there was a mutual mistake concerning Evelyn's life estate interest. They all mistakenly believed that she had a fee simple interest in the McPeters Hill property. During the hearing, Thomas testified, "We made a mistake by assuming that mother had title to the property in order to convey to me a warranty deed." Additionally, Mike asserts in his brief, "All the parties, including Thomas M., readily admit that there was a mutually mistaken belief between everyone—including Evelyn—that she owned the McPeters Hill Property outright at the time the agreement was executed. But they also now recognize that she only owned a life estate."

¶12.    Our Supreme Court has stated:

> A mutual mistake (of fact) is one common to both parties to a contract, each laboring under the same misconception; more precisely, it is one common to both or all parties, wherein each labors under the same misconception respecting a material fact, the terms of the agreement, or the provisions of the written instrument designed to embody such agreement. The mistake may apply to the nature of the contract, the identity of the person with whom it is made, or the identity or existence of the subject matter; but in order to relieve a party from liability on the contract, the mistake must relate to a material fact, past or present. Misrepresentation or fraud is not essential to proof of a mutual mistake.

*Greer v. Higgins*, 338 So. 2d 1233, 1236 (Miss. 1976) (quoting 17 C.J.S. *Contracts* § 144, at 894 (n.d.)). And "where both parties at the time of the agreement were operating under a mutual mistake of fact," the "contract may be set aside." *Lane-Lott v. White*, 126 So. 3d 1016, 1019 (¶18) (Miss. Ct. App. 2013) (quoting *White v. Cooke*, 4 So. 3d 330, 334 (¶15)

6

(Miss. 2009)); *see also Greer*, 338 So. 2d at 1236 (cancelling quitclaim deeds because all parties mistakenly believed the decedent's property had been transferred by intestate succession, when in fact the decedent had a will).

¶13.    Here, the parties were mistaken as to a material fact to the agreement: the interest that Evelyn possessed. The living, competent sons attest they did not comprehend that they possessed remainder interests in the property. They were not aware that Evelyn sought to convey an interest that she did not possess. Because of this misunderstanding, there was not a meeting of the minds and assent due to the mistake.

¶14.    While there was a mutual mistake regarding the conveyance of the sons' land interests, this does not void the agreement in its totality. The agreement sought to do two things: (1) absolve the debts of Frazier, Mike, and Larry; and (2) convey land to Thomas. The agreement is viable in terms of debt forgiveness, but this opinion does not reach that issue because it is not before us on appeal. However, the agreement as to a conveyance in fee simple is void.

**III.    The sons did not convey an interest in the 1987 agreement.**

¶15.    The trial court erred when interpreting the 1987 agreement to be a conveyance of property. Our Supreme Court has stated:

> In construing instruments of conveyance, "it is necessary under well recognized rules of construction that they be considered as a whole, and the intent of the parties be gathered from the plain and unambiguous language contained therein." *Rogers v. Morgan*, 250 Miss. 9, 21, 164 So. 2d 480, 484 (1964). "The meaning of the language and intention of the parties to be determined by the Court is to be found in the language used in the instrument." *Id*.; *Pursue Energy Corp. v. Perkins*, 558 So. 2d 349, 351-53 (Miss. 1990); *see also Simmons v. Bank of Miss.*, 593 So. 2d 40, 42-43 (Miss. 1992) (In

construing written instruments, "our concern is not nearly so much what the parties may have intended as it is what they said, for the words employed are by far the best resource for ascertaining intent and assigning meaning with fairness and accuracy." (quoting *UHS–Qualicare v. Gulf Coast Comm. Hosp.*, 525 So. 2d 746, 754 (Miss. 1987))). Courts must ascertain the meaning of the language actually used, and not "some possible but unexpressed intent of the parties." *Simmons*, 593 So. 2d at 42-43.

*Whittington v. Whittington*, 608 So. 2d 1274, 1278 (Miss. 1992) (cleaned up).

¶16. Here, the 1987 agreement does not have language attesting to any of the sons conveying their interests in the McPeters Hill property to Thomas. The agreement states, "Evelyn Coleman has given Thomas M. Coleman his amount ($10,600) in land." Our precedent instructs courts to ascertain the meaning of the language actually used. The agreement simply reflects Evelyn's intent to forgive debts of some sons and give land to Thomas. In comparison, the warranty deed also does not reflect a conveyance on behalf of any of the sons. The deed details a conveyance from Evelyn to Thomas. Neither of the sons signed this deed nor conveyed the subject property in any other deeds or agreements. Thomas's attorney later realized that the agreement did not convey the sons' interest in the property and attempted to rectify it by providing quitclaim deeds to the sons. Frazier quitclaimed his interests to Thomas. Therefore, we will not disturb this conveyance. However, the court erroneously interpreted that Larry and Mike intended to convey their remainder interests as well.

## CONCLUSION

¶17. Ultimately, Evelyn intended to bestow gifts of debt forgiveness to her sons and provide Thomas with land since he was not indebted to her. But as mentioned, the debt

forgiveness is not properly before us and is separate from the land conveyance. Finally, Evelyn could not have conveyed an interest that she did not possess. Finding that the trial court erred, we reverse the judgment appealed from, strike its recording from the land records, and render the portions of the 1987 agreement purportedly conveying a fee simple interest solely to Thomas void.[3]

¶18.   **REVERSED AND RENDERED.**

   **CARLTON AND WILSON, P.JJ., GREENLEE, McDONALD, LAWRENCE AND SMITH, JJ., CONCUR. McCARTY AND EMFINGER, JJ., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.  BARNES, C.J., NOT PARTICIPATING.**

---

[3] With regard to unjust enrichment, both parties agree that any ruling or explanation on unjust enrichment is not in the record, thus we decline to reach that issue.

AGREEMENT

03/31/87

During 1986 and early 1987, Evelyn Coleman loaned Frazier Coleman $10,600 in cash. This amount has been verified by Frazier on 3/30/87. In order for Evelyn Coleman to forgive Frazier for the amount he has borrowed, Evelyn Coleman has chosen to forgive Mike and Larry Coleman, jointly, for the balance of the two notes (one with original amount of $19,340.00 and one in the original amount of $2,650.00). The balances of these two notes are $9,516.66 and $1,325.00, respectively. Evelyn Coleman does not want to charge Mike and Larry Coleman any additional interest on the above mentioned notes, and Evelyn Coleman also wants to forgive Mike and Larry Coleman for the rent that they owe her for 1985, 1986, and part of 1987, in order to equalize what she has given Frazier Coleman. Evelyn Coleman has given Thomas M. Coleman his amount ($10,600) in land.

The recap is as follows:

| Frazier Coleman | Mike and Larry Coleman | Thomas M. Coleman |
|---|---|---|
| Money borrowed: | Joint Note: $9,516.66 | $10,600.00 |
| $10,600.00 Cash received | Joint Note: 1,325.00 | |
| | Bal.'85 Rent 1,000.00 | Value of land, $300.00 per acre, per Percy Hodge's letter, attached. |
| | Bal.'86 Rent 6,000.00 | |
| | Portion '87 3,358.34 Rent | $300 x 40 = $12,000 |
| | Total: $21,200.00 | − $10,600 = $1,400.00 Thomas M. Coleman is to pay in cash. |

Dated 3/31/87

_Evelyn S Coleman_
Evelyn S. Coleman

_Thomas M. Coleman_
Thomas M. Coleman

_Mike Coleman_
Mike Coleman

_Larry Coleman_
Larry Coleman

_Frazier Coleman_
Frazier Coleman

EXHIBIT #3
County: ALCORN
Cause No. 18-0214
5/23/2019    KCV

WARRANTY DEED

FOR AND IN CONSIDERATION OF One Dollar ($1.00) and other good and valuable considerations, the sufficiency and receipt of all of which are hereby acknowledged, I, EVELYN S. COLEMAN, an unremarried widow, do hereby convey and warrant unto THOMAS M. COLEMAN the following described property:

Situated in the County of Alcorn, State of Mississippi, to-wit:

The Southeast Quarter of the Southwest Quarter of Section 11, Township 2 South, Range 6 East in Alcorn County, Mississippi, containing 40 acres, more or less.

It is my intention to convey to him by deed of gift 88.3% of the above-described property, and to sell to him 11.7% of the above-described property.

This conveyance is made subject to 1987 taxes not yet due and payable, which the grantee assumes and agrees to pay.

Witness my signature on this 4th day of April, 1987.

*Evelyn S. Coleman*
EVELYN S. COLEMAN

STATE OF MISSISSIPPI
COUNTY OF ALCORN

Personally appeared before me, the undersigned authority within and for the aforesaid county and state, the within named EVELYN S. COLEMAN, who acknowledged that she signed and delivered the foregoing instrument on the day and year therein mentioned.

Given under my hand and official seal of office on this 9th day of April, 1987.

*Katie Hamrick*
Notary Public

My Commission Expires:
My Commission Expires September 20, 1989

EXHIBIT "A"

I, LEON FIELDS, CHANCERY CLERK OF SAID COUNTY AND STATE CERTIFY THAT THE FOREGOING INSTRUMENT WAS RECEIVED FOR RECORD ON THE ___ DAY OF April, 1987 AT 2:40 O'CLOCK P. M. AND HAVE BEEN DULY RECORDED IN ___ BOOK 232 PAGE 466 ON THE 13 DAY OF April, 1987. GIVEN UNDER MY HAND AND OFFICIAL SEAL.

*Leon Fields*
LEON FIELDS, CHANCERY CLERK

*Anit Meekan*
DEPUTY CLERK

EXHIBIT #5
County: ALCORN
Cause No. 18-0214
5/23/20 19 KCW